## MOORE v. TRIMMIER.

1. A confession of judgment taken by a clerk of court to himself individually is valid as against the judgment debtor and all subsequent purchasers and encumbrancers.

2. A tract of land being levied and sold by the sheriff under two judgments, it was agreed by all parties that the proceeds should be applied first to the senior judgment, next to an intermediate mortgage, and lastly to the junior judgment, which was accordingly done, and the junior judgment thereby failed of full payment. *Held*, that as against the judgment debtor and those whose rights against him subsequently attached, this junior judgment was not satisfied in fact or by operation of law.

3. Where a judgment debtor sells or mortgages his lands at different times to successive purchasers and mortgagees, the prior purchasers and mortgagees have an equity to require the creditor to enforce his judgment against the several parcels in the inverse order according to date of the several sales and mortgages; but this equity does not attach in favor of a purchaser at a foreclosure sale as against prior purchasers who were subsequent to the mortgage, especially where the property was worth more than the mortgage debt, for in such case the equity of redemption purchased at the foreclosure sale had a value.

4. And where two tracts, covered by a judgment lien, were embraced in one mortgage, one of which was afterwards sold to A, and then a third tract of the mortgagor was sold to B, and the mortgage was then foreclosed, A repurchasing his tract and C purchasing the other tract embraced in the mortgage, the equity of redemption sold to C should first be subjected to the payment of the judgment, the value of such equity of redemption to be determined by deducting its proportion of the mortgage debt from its real value as ascertained by testimony.

5. A purchaser of land sold subsequent to a mortgage of other lands of the vendor, but prior to a sale under a foreclosure of such mortgage, is entitled to require a senior judgment, having a lien on all these lands, to be enforced against the value of the equity of redemption, ascertained as above, before resorting to his land; but he has no such

equity as against the mortgages, they being prior in date to his purchase.

6. A party to the action and having an interest in the subject thereof, derived from his deceased father, may testify to a conversation between such father and another person, now deceased, as a witness against the representative of such deceased person who is a party to the action.

7. When a purchaser of land from a judgment debtor is induced to make the purchase by assurances from the judgment creditor that the judgment "will never cause you any trouble," the judgment creditor is estopped from afterwards enforcing his judgment against the land so purchased.

8. When a judgment creditor has estopped himself from enforcing his judgment against land sold by his debtor, the prior purchasers of other lands are nevertheless entitled to have the judgment credited with the value of the land which, but for such estoppel, would have been primarily liable for the payment of this judgment.

9. Parties not appealing are not entitled to modifications of the Circuit decree made upon exceptions taken by other parties to the cause; and where it is adjudged that plaintiff is not entitled to enforce his judgment against lands purchased from the judgment debtor by S and T, and the plaintiff does not appeal, but upon exceptions by other parties affected the Circuit decree is declared to be erroneous in this particular, plaintiff cannot enforce his judgment against S and T, and can enforce it against these appellants for so much only as remains due after deducting the value of these lands.

10. Petition for rehearing dismissed, no material fact or principle having been overlooked.

11. Where the Brief shows that a party has been regularly served, and that notice of appeal was duly served. this court must pass upon the rights of such party under exceptions of appellants. This court cannot permit an amendment of the Brief after its judgment has been rendered, but *remittitur* will be stayed to ask a reopening of the Circuit decree, if so entitled.

Before HUDSON, J., Spartanburg, April, 1889.

Action by Baxter H. Moore against Margaret Trimmier, administratrix of F. M. Trimmier, and others. The Circuit decree was as follows:

This cause was heard upon Circuit in the year 1885, and on the 17th of December of that year the Circuit Judge, W. H Wallace, rendered a judgment. From that judgment an appeal was taken to the Supreme Court; and the court, without adjudg-

ing the cause upon its merits, sent the case back to this court in order that all the subsequent purchasers of property from, and lien creditors of, John Winsmith, being interested in the event of the suit and the questions involved, should be made parties to the action.[1] That has been done. So that the only difference betwixt the case now presented and the case previously presented is the addition of the new parties and the adjustment and adjudication of the rights of these respective parties, as between each other and as against the plaintiff and the defendant and the representative of the estate of F. M. Trimmier, who has been substituted for the deceased, F. M. Trimmier.

The principles of law announced by Judge Wallace in his decree of the 17th of December, 1885, I fully concur in. They are the fundamental principles by which the equities of the parties to this action are to be adjudged. That fundamental principle is, that where a debtor disposes of his property, or suffers liens to be successively acquired thereon, or grants liens thereon by way of mortgage, that if a creditor seeks to sell the property of the judgment debtor thus disposed of and thus encumbered, he may in equity in behalf of subsequent purchasers and creditors be forced to resort to the sale of the property in the inverse order of those sales. The decree of Judge Wallace announcing this principle I fully endorse.

There is also connected with this case a question as to the force and effect of a certain sale of the property of the judgment debtor, Winsmith, in the County of Union, made by the judgment creditor, F. M. Trimmier, as far back as 1879. That property, it appears, was sold to satisfy a judgment older than the judgment of F. M. Trimmier, a mortgage also older than the judgment of F. M. Trimmier, and also the said judgment. Trimmier was the owner of that mortgage. At the sale it was announced that the property would be sold for the satisfaction of these three liens in the order of their priority; and it was so sold. The controversy that arose betwixt Mr. Trimmier, the judgment creditor, and Winsmith, the judgment debtor, in regard to the force and effect of that sale, and the application of the purchase money, was adjudicated on Circuit by Judge Pressley, from whose judg-

[1] See *Moore* v. *Gentry*, 25 S. C., 334.

33—32

ment an appeal was taken to the Supreme Court, and that court, in vol. 23 of the South Carolina Reports, beginning at page 449, affirmed the judgment of the court below, which judgment held that the judgment of F. M. Trimmier was not entirely satisfied, and that the application of the purchase money to the three liens according to their priority was correct.

Those who have been recently made parties to the present action were not parties to that action, and, of course, are not bound by that judgment. But that record is in evidence here, and there is nothing in the testimony in this case which in my opinion would, in behalf of these new parties, alter any principles decided in that case. Had the land on that occasion been sold alone to satisfy the judgment of Trimmier and the one senior thereto, it would have been sufficient for that purpose. But inasmuch as it was sold to satisfy a senior mortgage, a mortgage senior to Trimmier's judgment, and inasmuch as that course was approved of by the judge on Circuit and the Supreme Court, and inasmuch as that disposition of the property was such as a court upon due application would have ordered to be made, I see no ground for the present additional parties to this action to sustain the position which is here taken.

That position is, that the judgment of F. M. Trimmier was by that proceeding actually satisfied, at least by operation of law. The evidence is that it was not satisfied, and that the fund was, under the sanction of the Circuit Judge, applied to the mortgage as well as the judgments, and that such an application left a certain balance upon Trimmier's judgment due. All this was sustained in a proceeding by Trimmier against Winsmith to have the said judgment renewed, and it was that case that went to the Supreme Court. I hold, therefore, that this judgment of Trimmier, which has thus been renewed and revived, is not satisfied; but that there is due upon it the balance that was thus found to be due, with the costs originally upon the judgment and the costs of renewal; but the costs of renewal will not be leviable against prior alienees.

Now, the next interesting question is as to the issue that is made with the administratrix of the estate of Trimmier by the heirs of R. C. Hunter. It seems that on the 25th day of Octo-

ber, 1883, R. C. Hunter purchased of Winsmith 183 acres of
land.   Evidence has been introduced and admitted, against ob-
jection, by the son of R. C. Hunter and a third party, to the
effect that Hunter, before purchasing this land, consulted Trim-
mier, who was then clerk of court, and whose judgment was then
outstanding against all the property of Winsmith, as to the pro-
priety of his buying this land.   On that occasion he was made
aware of the judgment of F. M. Trimmier, but Trimmier expressed
pressed to him the opinion that he would be perfectly safe in
purchasing this land, and that he need not fear that his judgment
would interfere with him, inasmuch as there was other property
of the debtor, Winsmith's, subject to the lien of his judgment
amply sufficient to satisfy it.   It is in evidence that R. C. Hun-
ter and F. M. Trimmier were very fast friends.   It is contended
in behalf of the heirs at law of R. C. Hunter that F. M. Trim-
mier in his life-time was, and his legal representative since his
death is, estopped from attempting to enforce his judgment upon
the land of Hunter.

After mature consideration I have come to the conclusion that
enough did not occur betwixt Trimmier and R. C. Hunter to
amount to a waiver on the part of Trimmier, or to estop his legal
representative now from enforcing the judgment against that piece
of property.   I wish I could conclude otherwise, because there is
no doubt but that Hunter did confer with and consult Trimmier as
to the advisability of purchasing this land.   But there was noth-
ing concealed.   All the facts were laid before him.   It will cer-
tainly be now a very great hardship if the heirs at law of Hunter
have to pay this judgment, or if it is enforced out of his land.
But such is often the case, and sadly so, where people with their
eyes open purchase land encumbered with the lien of a judgment.
Hunter acted upon the opinion of Trimmier, and took no release.
I am constrained to hold, therefore, that the defence set up by
the heirs at law of R. C. Hunter in this case cannot prevail.

There remain no serious matters of contest in this case. These
two difficulties being settled, in my opinion, to wit: that the
judgment of Trimmier is a valid outstanding judgment for the
amount claimed; and that it is a lien upon this land of Hunter's

and enforcible thereon, it only remains now to pronounce the order in which this judgment shall be enforced.

According to the dates of the respective sales made by Winsmith and the respective mortgages given by him, and the dates of their foreclosure, it follows, under the well established principle of equity at first announced, that the other purchasers are entitled to have those judgments enforced in the following order, to wit: that it shall first be paid out of the land of R. C. Hunter, deceased, viz., the 183 acre tract, which was sold in the year 1883. A tract of seven acres of land mortgaged to F. M. Trimmier by Winsmith, 23rd of February, 1882, and purchased at the foreclosure sale by Mrs. M. J. Thomson, is exempt from the lien of this judgment, because Trimmier was a party to that action and suffered the sale to be made, free and discharged from the lien of his judgment. The tract of 20 acres of land mortgaged on the 17th day of May, 1881, by Winsmith to C. E. Smith is likewise exempt, because to that suit of foreclosure Trimmier was also a party. This would leave subject to the lien of his judgment next in order the White Oak Spring tract, sold by Winsmith to L. A. Mills, 18th August, 1882. This will come next in order to the Hunter tract. Next in order will come the Nimrod Moore tract, sold by Winsmith to C. E. Smith on the 17th day of May, 1881. And last in order will come the Tom Wofford tract, mortgaged by Winsmith to Floyd and Moore, February 28th, 1880, and sold under a decree of foreclosure and bought by the plaintiff October 1st, 1884.

I will also state in regard to the conversations that are said to have taken place between R. C. Hunter in his life-time and F. M. Trimmier in regard to the purchase of the 183 acre tract of land, that, in so far as the other alienees and mortgagees are concerned, nothing short of an absolute waiver or release by Trimmier of his lien in favor of Hunter would prevent the said alienees and mortgagees from enforcing, as against the said 183 acres of land, the principle of equity announced in this decree. Another point in the argument of the case, made by counsel for Mr. Hunter and others, was that, inasmuch as Trimmier had foreclosed a mortgage on the 7 acre tract, which was bought by Mrs. Thomson in 1885, that the proceeds of that sale were applicable to this

judgment. I do not think so. The same point is made in regard to the sale of the 20 acres under the mortgage to C. E. Smith, to which Trimmier was a party, and that the proceeds of that sale likewise should be paid on the judgment of Trimmier *pro tanto.* I cannot concur in this either.

It is therefore ordered, adjudged, and decreed, that the administratrix of the estate of F. M. Trimmier, deceased, be restrained from levying and enforcing the said judgment and execution, except in the manner and in the order indicated in this decree against the real estate of the parties to this action. It is further ordered, that the plaintiff's costs in this action and that of the officers of court be paid by the legal representative of the estate of F. M. Trimmier, deceased, out of the assets of that estate; and that the defendants do pay respectively each his or her costs, as they were called in for their own benefit and litigated accordingly. No one has an equitable claim to costs out of the estate of Trimmier except the plaintiff.

*Messrs. Nicholls & Moore* and *Carlisle & Hydrick,* for Hunter and Mills.

*Messrs. Bomar & Simpson,* for Trimmier.

*Mr. R. K. Carson,* for plaintiff.

April 17, 1890.    The opinion of the court was delivered by

MR. JUSTICE McIVER.    The sheriff of Spartanburg County having levied on a tract of land in the possession of plaintiff, known as the "Tom Wofford place," under an execution issued to enforce a judgment recovered by F. M. Trimmier against one John Winsmith on the 13th of March, 1879, which land was then owned by said Winsmith, this action was commenced to enjoin the sale until certain other property, formerly belonging to Winsmith, should be exhausted; the same, as plaintiff contends, being first liable to satisfy said judgment. All parties interested having been brought in as defendants to this action, the question presented is as to the order in which the property held by the several parties is liable to be subjected to the payment of said judgment.

There are, however, two preliminary questions raised by the appellants which must first be disposed of before the main question in the case can arise. These questions are, (1) whether the Trimmier judgment is a valid judgment; (2) if so, whether it has not been satisfied.

The validity of the judgment is assailed upon the ground that it was a judgment by confession before the clerk, and that Trimmier, being himself the clerk at the time, was not competent to take or enter such a judgment in his own favor. This question has already been decided in the case of *Trimmier* v. *Winsmith* (23 S. C., 449), which was a proceeding to renew the execution previously issued to enforce said judgment, in which the same question was there raised by Winsmith as one of the grounds upon which he based his resistance to the renewal. But the court held, that while it was not a commendable practice for a clerk to take and enter up a confession of judgment in his own favor, yet that a judgment so taken and entered would be good and valid against the judgment debtor. Now, while it is true that the appellants, not having been parties to that proceeding, would not be bound thereby as a matter *res adjudicata,* and while the decision only went to the extent of holding the judgment valid as between the parties to it, yet it seems to us that the principles upon which that decision rested require that we should, in the absence of any allegation or proof of fraud in the taking of the judgment, hold the judgment valid in this case. The effect of that decision was to make that judgment a lien upon all the real estate of Winsmith in the County of Spartanburg at the date of its entry; and all parties dealing with that property, either by taking liens upon it or purchasing it, did so subject to the lien of that judgment.

But, assuming the judgment to be valid, it is next contended that it has been satisfied by operation of law. The facts upon which this contention is based are these: Winsmith owned a valuable tract of land in Union County, upon which the following liens had been obtained: (1) A judgment in favor of Briggs; (2) a mortgage in favor of the plaintiff herein and said Trimmier; (3) the aforesaid judgment in favor of Trimmier, a transcript thereof having been filed in the proper office in Union County, besides other junior judgments, which need not be further noticed,

as the holders thereof make no claim. On the 1st of December, 1879, the Union County land, having been levied on under the Briggs judgment, was sold, it being understood, and so announced at the sale, that the proceeds of the sale should be applied to the aforesaid liens, including the mortgage, according to their priority as fixed by their dates; and the same were so applied by the sheriff of Union County under an order passed by his honor, Judge Wallace, upon the petition of Trimmier and Moore, the mortgagee. The result was, that the proceeds of the sale, after satisfying the Briggs judgment and the mortgage, were insufficient to satisfy in full the Trimmier judgment, though, if the proceeds of sale had not been applied to the mortgage, they would have been amply sufficient to satisfy the Trimmier judgment in full.

The appellants now contend, that, as matter of law, no part of the proceeds of the sale of the Union County land could have been properly applied to the mortgage thereon, but that the same were properly applicable to the judgments in their order, and such application, if now required, as it should be, would satisfy the Trimmier judgment. This matter, also, has been adjudged in the case of *Trimmier* v. *Winsmith, supra;* and although, by reason of the fact, that these appellants were not parties to that case, the question cannot be regarded as *res adjudicata* as to them, yet it did determine that, as between Winsmith and Trimmier, the judgment was not fully satisfied, either in fact or in law, by the proceeds of the sale made 1st December, 1879, because, while Winsmith might possibly have then required such an application of the proceeds of sale as would have satisfied the Trimmier judgment, yet, having consented that so much of said proceeds as were necessary for the purpose should be applied to the satisfaction of the mortgage, there was a balance then left unpaid on the Trimmier judgment. Now, as the rights of appellants arose subsequent to the sale of the 1st of December, 1879, as will be presently seen, they have no right to complain of any arrangement that Winsmith then saw fit to make with his then creditors; for, conceding that Winsmith might then have required that the proceeds of the sale made by the sheriff of Union should be applied to the judgments in their order, yet he certainly had the right to consent to a different application where the rights of third persons had not arisen.

What would have been the result if the rights of these appellants had arisen before the sale of 1st December, 1879, we need not consider, under the facts of this case; and we intimate no opinion as to that. We agree, therefore, with the Circuit Judge, that the Trimmier judgment must be regarded as a valid judgment, and that it was neither in fact nor in law satisfied by the sale of the Union County lands.

The next inquiry is as to the order in which the property now held by the several parties, which was originally subject to the lien of the Trimmier judgment, shall be resorted to for the purpose of satisfying the balance now due on that judgment. The facts upon which this question is to be determined are as follows: On the 28th of February, 1880, Winsmith mortgaged two tracts. of land—one known as the "Tom Wofford place," and the other as the "Nimrod Moore place"—to the plaintiff and one A. G. Floyd to secure the payment of a debt of $1,075. On the 7th of May, 1881, Winsmith sold and conveyed the Nimrod Moore place to C. E. Smith for the consideration of $2,000, and on the same day mortgaged to said Smith a parcel of land in the city of Spartanburg containing 20 acres. On the 3rd of February, 1882, Winsmith mortgaged a tract of land, containing seven acres, to F. M. Trimmier. On the 18th of August, 1883, Winsmith sold and conveyed to L. A. Mills the White Oak tract, containing 308 acres; and on the 24th of October, 1883, Winsmith sold and conveyed a tract, containing 184 acres, to R. C. Hunter. Under proceedings to foreclose the mortgage of Winsmith to the plaintiff and Floyd, the land covered thereby was sold on the 1st of October, 1884, when the Tom Wofford place was bought by the plaintiff herein for the sum of $1,310, and the Nimrod Moore place by C. E. Smith, above named, for $390. On the 5th of January, 1885, or perhaps some time in 1884, the 7-acre tract was sold under proceedings to foreclose the mortgage to Trimmier, and bought by the defendant, M. J. Thomson; and on the 4th of May, 1885, under proceedings instituted by C. E. Smith, to which Trimmier, as a holder of a prior lien, was made a party, to foreclose the mortgage thereon, the 20-acre tract was sold, and bought by defendant, S. J. Simpson.

It thus appears that the liens on the real estate of Winsmith,.

as they originally stood, were as follows : (1) The Trimmier judgment, which was a lien on the entire real estate ; (2) the mortgage to plaintiff and Floyd; which was a lien only on the Tom Wofford and Nimrod Moore places; (3) the mortgage to C. E. Smith on the 20-acre tract ; (4) the mortgage to Trimmier on the seven-acre tract. But the order in which the actual sales were made was as follows : (1) The sale of the Nimrod Moore place to C. E. Smith ; (2) the sale of the White Oak tract to L. A. Mills ; (3) the sale of the 184-acre tract to Hunter ; (4) the sale of the Tom Wofford place and of the Nimrod Moore place, under proceedings to foreclose the mortgage thereon, to the plaintiff and Smith, respectively ; (5) the sale of the 7-acre tract under proceedings to foreclose the mortgage thereon ; (6) the sale of the 20-acre tract under proceedings to foreclose the mortgage thereon, to which Trimmier, the judgment creditor, was a party.

Under this state of facts, the Circuit Judge, after having determined that the judgment of Trimmier was a valid, unsatisfied judgment, as we have stated above, held that by reason of the fact, that Trimmier was a party to the actions for foreclosure of the mortgages on the 7-acre tract and the 20-acre tract, and suffered the sales therein ordered to be made free from the lien of his judgment, those tracts were now exempt from the lien of such judgment, and that, for the balance due on the Trimmier judgment, resort must be had to the several tracts in the following order : first, to the 184-acre tract sold to Hunter ; next, to the White Oak tract, sold to L. A. Mills; next, to the Nimrod Moore tract, sold to C. E. Smith ; and last, to the Tom Wofford tract, sold to the plaintiff. It is, perhaps, proper to state here, that a defence set up by the owners of the Hunter tract, based upon an alleged estoppel, which will be more fully stated hereafter, was overruled.

From the judgment rendered below, the heirs of Hunter and the heirs of Mills, both of whom had died, alone appeal upon the several grounds set out in the record, by which, in addition to the questions already considered, as to the validity of the Trimmier judgment, and as to whether the same should not be regarded as satisfied by operation of law, they make, substantially, the following questions : (1) Whether the order of liability of the several

tracts of land to the satisfaction of the Trimmier judgment should be fixed by the dates at which they were actually sold, or whether the dates should be ascertained by reference to the dates of the mortgages under which some of the tracts were sold; (2) whether, as against these appellants, the Trimmier judgment should not be reduced by the value of the 7-acre and the 20-acre tracts, which Trimmier allowed to be sold free from the lien of his judgment; (3) whether the present holder of the Trimmier judgment is not estopped, by his representations to Hunter when he bought, from enforcing the lien of the judgment against the Hunter tract; (4) if so, whether the Trimmier judgment should not be credited with the value of the Hunter land before it can be enforced against the tract bought by L. A. Mills. Counsel for the holder of the Trimmier judgment has, in accordance with the proper practice, also given notice that he will endeavor to sustain the judgment below so far as the matter of estoppel is concerned, upon the ground that the Circuit Judge erred in receiving the testimony of J. H. T. Hunter, which was duly excepted to at the time.

It is not, and cannot be, denied that the rule is well settled, that where a judgment debtor sells portions of his land covered by the lien of a judgment, at different times, to successive purchasers, the first purchaser has an equity to require that the lien shall be first enforced against the last parcels purchased, so that the land shall be sold under the lien in the inverse order to that in which it was sold by the judgment debtor. This well settled rule rests upon the principle, that where the first purchaser buys, leaving in the hands of the judgment debtor property sufficient to satisfy the judgment either in whole or in part, as the case may be, it would be manifestly inequitable to allow his property sold for the payment of the debt of his vendor, until all the property of the vendor is exhausted, and that when the second purchaser buys, he buys subject to such equity. To use the language of Kent, Ch., in *Clowes* v. *Dickenson* (5 Johns. Ch., 241), "he sits in the seat of his grantor." It seems to us, that the same principle applies with equal force to a case where there are several successive mortgages on different tracts of land, all of which are covered by the lien of a senior judgment; and that in such a case the first mortgagee has an equity to require that resort shall first

be had for the satisfaction of the lien of the judgment to the lands last mortgaged. See *Bank* v. *Howard & Garmany*, 1 Strob. Eq., 173, and the cases therein cited.

But it is contended, as we understand, that while this may be true so far as the rights of a mortgagee are concerned, it is not necessarily true as to the rights of a purchaser at a sale for the foreclosure of such mortgage. That is to say, while it may be true that a mortgagee may have the right to invoke the equity above mentioned for the purpose of securing the payment of his mortgage debt, yet that it does not follow, necessarily, that a third person, buying at a sale for foreclosure of the mortgage, has any such equity, especially where, as in this case, the event shows that the mortgaged property was more than sufficient to pay the mortgage debt, thus leaving in the hands of the original debtor property in the shape of what is called the "equity of redemption," until the sale for foreclosure was made. There is much force in this view. As a mortgage, under our law, is not a conveyance, the legal title to the property remains in the mortgagor until sold under proceedings for foreclosure; but, such title being subject to the lien of the mortgage, and to sale in satisfaction of such lien, what really is in the mortgagor is only so much of the property, or its value, as may be in excess of the mortgage debt. What thus remains in the mortgagor is as much his property, and, as such, subject to the payment of his debts, as any other property he may have not covered by any lien.

Now, while it appears that Winsmith sold his equity of redemption in the Nimrod Moore place to C. E. Smith before either Mills or Hunter bought, it does not appear that his equity of redemption in the Tom Wofford place was ever sold until after both Mills and Hunter bought; and hence that interest in the Tom Wofford place, whatever it may be, should first be subjected to the payment of the Triimmier judgment, before resort can be had either to the Mills or Hunter land. It seems to us that it would not be just to use the result of the sale of the Tom Wofford place under the judgment for foreclosure as a test of the value of the equity of redemption in that place, because both that and the Nimrod Moore place having been embraced in the same mortgage, it would be equitable that each of those places should

be made to contribute ratably to the payment of the mortgage debt. But as Winsmith's equity of redemption in the last named place had been previously sold by him to Smith for $2,000—a sum more than sufficient to satisfy the mortgage debt—it is not improbable that the Tom Wofford place was made to contribute more than its fair proportion to the payment of the mortgage debt by the sale for foreclosure, as it brought at that sale $1,310, while the Nimrod Moore place only brought $390. In order, therefore, to ascertain the value of the equity of redemption in the Tom Wofford place, which still remained the property of the judgment debtor at the time of the sale, both to Mills and Hunter, and which, therefore, was first liable to the payment of the Trimmier judgment, the value of the two places—Tom Wofford and Nimrod Moore—should be ascertained by testimony; and this will afford the means of determining the proportion in which each was equitably liable for the mortgage debt, and deducting the proportion for which the Tom Wofford place was liable from its real value will give the true value of the equity of redemption in that place, to which extent that place should first be subjected to the payment of the Trimmier judgment.

The same principles would have been applicable to the equity of redemption in the 7-acre and the 20-acre tract, which were not sold until after the sales to Mills and Hunter; but as the Circuit Judge held that both of those tracts were exempt from the lien of the Trimmier judgment, and as there was no exception to or appeal from such ruling, no part of either of these tracts can now be subjected to the payment of the Trimmier judgment. It is true, that while none of the parties appealed from so much of the decree as exempted those tracts from liability to the Trimmier judgment, the heirs of Mills and of Hunter have appealed upon the ground that the Circuit Judge erred in not holding that, as against these appellants, the Trimmier judgment should be reduced by the value of those two tracts; and, therefore, it is necessary to consider that question. Upon the principles above announced, this position of appellants cannot be sustained as to the entire value of those tracts, as the mortgages thereon antedated the sales to Mills and Hunter, but should be sustained as to the value of the equity of redemption therein, to be ascertained in

the mode indicated as to the Tom Wofford place; for such equity of redemption was not sold until after the sales to Mills and Hunter were made. Trimmier, having been a party to the actions for the foreclosure of the mortgages on both of these tracts, must be regarded as having voluntarily acquiesced in the application of the value of the equity of redemption therein to the mortgages, one of which he held himself, when the same was, in equity, first applicable to his judgment, and must, therefore, account for such misapplication by a reduction, as to these appellants only, who alone make the question of his judgment, to the extent of such value, if, indeed, the testimony shall show it to be anything.

It only remains to consider the matter of estoppel set up by the Hunters, and the consequent effect thereof, if allowed, on the land bought by Mills. As this depends largely, if not entirely, upon the testimony of J. H. T. Hunter—one of the heirs of the purchaser, R. C. Hunter, and a party to this action—it will first be necessary to determine the question raised by counsel representing the Trimmier judgment as to whether such testimony, which is claimed to be incompetent under section 400 of the Code, was admissible. This witness was not called to testify as to any transaction or communication between the deceased, Trimmier, and the witness, but as to a transaction or communication between Trimmier and a third person—the purchaser, R. C. Hunter—and hence, under the cases of *Roe* v. *Harrison* (9 S. C., 279), and *Hughey* v. *Eichelberger* (11 *Id.*, 36), as well as under the express terms of the section, "between such witness and a person at the time of such examination deceased," &c., we do not think there was any error on the part of the Circuit Judge in receiving the testimony in question.

What, then, was the effect of that testimony? It seems to us to be impossible to avoid the conclusion from that testimony, which is all set out in the "Case," that R. C. Hunter was induced to buy the land which it is now proposed to subject to the payment of the Trimmier judgment by the positive assurance of Trimmier that his judgment would never be enforced against that land. According to that testimony Trimmier, when applied to by Hunter for information and advice as to whether he would be

safe in buying the land, after informing him that he held this judgment against Winsmith, and that Winsmith had a plenty of other property to pay it, used this language : "I will assure you what I have got against Winsmith will never cause you any trouble." In the face of such testimony, which was manifestly credited by the Circuit Judge, to allow this judgment now to be enforced against this land, probably to the extent of its full value, would be highly inequitable; and we must, therefore, conclude that the administratrix of Trimmier is estopped from doing so.

If this be so, then it is contended by the other appellants, the heirs of Mills, that inasmuch as Trimmier has estopped himself from subjecting the Hunter land to the payment of his judgment, which would otherwise have been liable to be exhausted before the land bought by Mills could be reached, the said judgment cannot now be enforced against the Mills land, except for such balance as may remain due thereon after deducting the value of the Hunter land. This position is, we think, well taken ; for, as Mills, by the voluntary act of Trimmier, has been deprived of his equity to throw the Trimmier judgment upon the Hunter land before the land bought by Mills could be reached, that judgment can now be enforced against the Mills land only to the extent for which it would have been liable if Trimmier had not by his own act defeated the original equity of Mills. But the other parties to this action who may be affected thereby, not having raised any such question, either by exception or otherwise, are now precluded from doing so, and therefore cannot avail themselves of the benefit which the heirs of Mills have claimed by their exceptions.

The practical result, therefore, must be this : that the Trimmier judgment cannot be enforced against the Hunter land at all, but that, for any balance which may be due thereon after deducting the value of the Hunter land, as well as the value of the equity of redemption in the 7-acre tract, the 20-acre tract, and the Tom Wofford tract, should first be enforced against the Mills land, and that the balance remaining due on the Trimmier judgment after deducting such amount as may be paid thereon out of the Mills land, if any, but without deducting the value of the Hunter land or the value of the equity of redemption in either

of the three tracts above mentioned, be paid first out of the Nimrod Moore place, and next out of the Tom Wofford place.

There being no appeal by any of the parties from so much of the decree as relates to the costs, it must necessarily be affirmed in that respect.

The judgment of this court is, that the judgment of the Circuit Court be modified as herein indicated, and that the case be remanded to that court for such further proceedings as may be necessary to carry out the views herein announced. · ·

A petition for a rehearing was filed by respondent, alleging certain errors in the order in which the lands were held to be liable to the Trimmier judgment.

May 2, 1890. The order of the court thereon was passed

PER CURIAM. We have carefully examined this petition, and finding that no material fact or principle of law has been overlooked, there is no ground for a rehearing. The petition is therefore dismissed.

A petition for rehearing was also filed by C. E. Smith, in which he alleged that he had no notice of the trial, the decree, or the appeal, and that he had a release of the lien of the judgment on the Nimrod Moore place; that he had put in a formal answer setting up this release, and had not supposed it necessary to employ counsel.

May 2, 1890. The order of the court thereon was passed

PER CURIAM. The facts stated in this petition are not such as, in our judgment, can be considered on a motion for rehearing. The record upon which this appeal was heard by this court shows that the petitioner was duly made a party defendant, and filed an answer, in which he "admits the allegations of the complaint, and submits his rights to the protection of the court"; that the Circuit decree adjudged, among other things, that the land of petitioner, the Nimrod Moore place, was liable to be sold before resort could be had to the land of the plaintiff, the Tom Wofford place; that from such decree there was no appeal by any of the

parties, except the heirs of Mills and the heirs of Hunter; and that "due notice of appeal" was given by the said heirs. Under a record exhibiting these facts, to which no objection was inter-posed, by any of the parties, this court was bound to assume, and did assume, that all parties interested were duly served with notices of the appeals on behalf of· the heirs of Mills and the heirs of Hunter, and proceeded to adjudicate the several questions presented by such appeals. The facts now relied upon by the petitioner to sustain his application, it is conceded, did not appear in the case as prepared for argument in this court; and therefore it is quite certain that this court has not overlooked any fact or principle of law material to the case as submitted for the decision of this court. As to the application that the petitioner be allowed now·to come in "and amend the brief" by inserting therein new and additional facts, we think it comes too late, after the case has been heard and determined by this court.

Whether the facts stated in the petition are such as would enti-tle the petitioner, by proper proceedings in the Circuit Court, to have the Circuit decree opened, is a matter which we have no authority now to consider; and as to that we are not to be regarded as expressing, or even intimating, any opinion either one way or the other. But with a view to afford the petitioner an opportunity to make such application, if he shall be so advised, the *remittitur* will be retained until the further order of this court. Though, to avoid any misapprehension, we must again repeat that this is not to be regarded as any indication whatever that such application can, in our judgment, be successfully made. It is therefore ordered, that the petition be dismissed without prejudice to the right of the petitioner to make such application as he may be advised to the Circuit Court for relief.