485 S.E.2d 903

Mary Elizabeth Simpson HANAHAN, Appellant,

v.

Kate McArver SIMPSON, Lucy Caroline Bowden Simpson Kuhne and Hazel Claire M. Efird Russo, each individually, as Personal Representatives, and as Trustees; Katharine Efird Sullivan, Individually and as Representative of the Descendants, known and unknown, born and unborn, of Mary Elizabeth Simpson Hanahan; John A. Kuhne, Jr., Individually and as Representative of the Descendants, known and unknown, born and unborn, of Lucy Caroline Bowden Simpson Kuhne; William D.S. Kuhne; Lucy Caroline B. Kuhne; and Willou Bichel, Respondents.

Kate McArver SIMPSON, Lucy Bowden Simpson Kuhne, Individually and as Personal Representatives and as Trustees, and Hazel Claire M. Efird Russo, as Personal Representative and as Trustee, Third–Party Plaintiffs,

v.

Mary Elizabeth Simpson HANAHAN; John A. Kuhne, Jr., Individually and as Representative of the Descendants, known and unknown, born and unborn, of Lucy Caroline Bowden Simpson Kuhne; William D.S. Kuhne; Lucy Caroline B. Kuhne; John A. Kuhne, individually; Willou Bichel, individually, and as Trustee of The Simpson Foundation and Nell Rice, Frances Dudley, Wilma Johnson, Claire E. Russo, and J.A. Kuhne, as all members of the Board of Advisors to the Simpson Foundation, Third–Party Defendants.

In the Matter of ESTATE OF William Henry Belk SIMPSON and the Alleged Will of William Henry Belk Simpson Dated December 23, 1987, and Prior Submitted Wills.

No. 24617.

Supreme Court of South Carolina.

Heard Jan. 9, 1997.

Decided May 12, 1997.

Rehearing Denied June 19, 1997.

144

Thomas H. Pope, III and Gary T. Pope, both of Pope and Hudgens, Newberry; Adele Jeffords Pope, Columbia; Jay Bender, of Baker, Barwick, Ravenel and Bender, Columbia; Thomas S. Tisdale, Jr., and Timothy W. Bouch, both of Young, Clement, Rivers and Tisdale, Charleston, for appellant.

R. David Massey, Chris B. Roberts and Arnold L. Ashley, all of Brown, Massey, Evans and McLeod, Greenville; and John A. Hagins, Jr., of Covington, Patrick, Hagins and Lewis, Greenville, for respondents Kate M. Simpson, Lucy Kuhne and Hazel Russo, as personal representatives, etc.

Elizabeth Van Doren Gray, of Glenn, Murphy, Gray and Stepp, Columbia, for Respondent Hazel Claire Russo and Katharine Efird Sullivan.

Jefferson V. Smith, Jr., and S. Brook Fowler, both of Carter, Smith, Merriam, Rogers and Traxler, Greer, for Respondents John Kuhne, Jr., William Kuhne and Lucy C. Kuhne.

G. Dewey Oxner, Jr., of Haynsworth, Marion, McKay and Geurard, Greenville, for Respondent Kate McArver Simpson, individually.

WALLER, Justice:

This is a will contest over the $48 million dollar estate of the late William Henry Belk Simpson (decedent/Simpson). Simpson's daughter,Mary Elizabeth Simpson Hanahan (Hanahan) challenged his will on grounds of undue influence, lack of testamentary capacity, fraud and mistake. After a jury trial, the will was upheld, and Hanahan was assessed sanctions under the South Carolina Frivolous Proceedings Act, S.C.Code Ann. § 15–36–10 et seq. (Supp.1995). We affirm in part, reverse in part.

## FACTS

Simpson died May 17, 1992 at the age of 84. He was survived by his wife, Kate McArver Simpson (Mrs. Simpson), two daughters, Lucy Simpson Kuhne(Kuhne) and Hanahan, and five grandchildren.

Between 1970 and 1987, Simpson executed approximately 10 wills; his final will was executed on December 23, 1987 (December will). The December will leaves Simpson's estate in trust, with the income to Mrs. Simpson for life,and gives Mrs. Simpson a special power of appointment permitting her, through her own will, to leave one-half of the estate to each of her daughters, or to by-pass them by leaving one-half of the residue of the estate to their children.[1] The purpose of the special power of appointment is to enable Mrs. Simpson to take advantage of any changes in tax laws which might occur prior to her death. If Mrs. Simpson fails to exercise the special power through her own will, the remainder of Simpson's estate goes upon her death, one-half to Kuhne outright (or her children if Kuhne predeceases), one-half in trust to Hanahan (or her children if she predeceases).

Hanahan brought this action challenging the December will, claiming it was the product of fraud, mistake, undue influence and lack of testamentary capacity. In particular, Hanahan challenged the December will's special power of appointment permitting her mother to omit her entirely. Hanahan alleged a history of family troubles, particularly with her mother, dating back to the 1960's when, during her divorce from her husband Claude Efird,her mother and father favored Efird for custody of their two children. She claimed the will provision was the result of undue influence over her father, and that Simpson was mistaken concerning the special power in his will.

After a two week trial, a directed verdict was granted on the claims of fraud and mistake. The jury returned a verdict against Hanahan on the claims of undue influence and lack of testamentary capacity.

Thereafter, the respondents sought sanctions against Hanahan pursuant to the South Carolina Frivolous Civil Proceedings Act. After a hearing, Hanahan was ordered to pay

---

1. Most of Simpson's prior wills left his assets in trust to his grandchildren. The testimony at trial indicated that such "generation skipping" would save substantial sums in estate taxes. Due to a change in tax laws in 1987 which penalized "generation skipping," a July, 1987 will was executed, leaving the remainder of his estate, upon Mrs. Simpson's death, to his two daughters, for life, remainder to their children.

respondents' attorneys fees and costs in the amount of $548,-317.38.[2]

## ISSUES

1. Did the court err in directing a verdict as to mistake?

2. Did the court err in refusing to apply the Dead Man's Statute?

3. Did the court improperly admit evidence of Hanahan's prior bad acts?

4. Did the court err in imposing sanctions against Hanahan?

## 1. MISTAKE

Hanahan contends Simpson was mistaken as to the contents of his will, in particular, the special power of appointment in favor of Mrs. Simpson. Accordingly, she asserts the trial court erred in directing a verdict against her on the issue of mistake. We disagree.

It is the general rule that the validity of a will is not affected by a mistake of either law or fact unless a mistake goes to the identity of the instrument or to fundamental error, as where, for example, two wills are drafted for different persons and one party signs that intended for another. *Ex parte King*, 132 S.C. 63, 128 S.E. 850 (1925). *See also Page on Wills*, § 13.4 at pp. 666–667 (1960); Thompson *Law of Wills*, § 135 (1916); 79 Am.Jur.2d *Wills* § 415. Where a testator is mistaken as to the contents of his will, the will may be invalidated in part. *Ex parte King, supra.* The contestant has the burden of proof as to any alleged invalidity once due execution of the challenged will is proved. *Byrd v. Byrd*, 279 S.C. 425, 308 S.E.2d 788 (1983); *Calhoun v. Calhoun*, 277 S.C.

---

2. The trial court also found the Personal Representatives (PRs) named in Simpson's will (Mrs. Simpson, Kuhne, and Russo (Hanahan's daughter)) were proper parties to serve. Hanahan challenges this ruling on appeal. We find no abuse of discretion in the trial judge's appointment of the PRs. *Parkman v. Hanna*, 311 S.C. 20, 426 S.E.2d 743 (1992); *In re McClam's Estate*, 245 S.C. 315, 140 S.E.2d 478 (1965) (lower court's determination of qualification of PRs will not be overturned absent an abuse of discretion).

527, 290 S.E.2d 415 (1982). Evidence the will was read to the testator gives rise to a rebuttable presumption the testator knew and approved its contents. *Id.*[3] A mistake as to the **legal effect of language** in the will is no basis for refusal of probate, even if caused by incorrect legal advice. *Karesh, Wills,* p. 27 (1977). *See also Atkinson, supra* at § 58 (where there is no mistake as to what the will contains but testator merely misconceives the legal effect of the language, no grounds for rejection of the will or any part thereof); Thompson, *supra* at § 136 (will may not be denied because testator did not understand the legal effect of the provisions of his will).

In reviewing a directed verdict, this Court must determine whether a verdict for the party opposing the motion would have been reasonably possible under the facts. *First State Savings and Loan v. Phelps,* 299 S.C. 441, 385 S.E.2d 821 (1989). The issue must be submitted to a jury whenever there is material evidence tending to establish the issue in the mind of a reasonable juror. *Wright v. Gilbert,* 227 S.C. 334, 88 S.E.2d 72 (1955); *Gosnell v. SCDHPT,* 282 S.C. 526, 320 S.E.2d 454 (Ct.App.1984). However, this rule does not authorize submission of speculative, theoretical and hypothetical views to the jury. We have repeatedly recognized that when only one reasonable inference can be deduced from the evidence, the question becomes one of law for the court. *Bell v. Bank of Abbeville,* 211 S.C. 167, 44 S.E.2d 328 (1947). A corollary of this rule is that verdicts may not be permitted to rest upon surmise, conjecture or speculation. *Bultman v. Barber,* 277 S.C. 5, 281 S.E.2d 791 (1981); *Tallon v. Seaboard Coast Line Railroad Co.,* 270 S.C. 362, 242 S.E.2d 418 (1978);*Horton v. Greyhound Corporation,* 241 S.C. 430, 128 S.E.2d 776 (1962).

---

**3.** Hanahan claims, citing *In re McKie's Estate,* 107 S.C. 57, 91 S.E. 978 (1917), that mere execution of a will by a testator of doubtful capacity does not give rise to a rebuttable presumption. Here, however, respondents proved more than "mere execution" inasmuch as there was testimony that Simpson's attorney read the changes in the will to him and advised him concerning the special power of appointment. See Atkinson, *Law of Wills,* § 58, note 14 (2d Ed.1953)(rebuttable presumption applies even to feeble minded testators so long as there is evidence testator read, or was read contents of, will).

■ Here, there is simply no evidence Simpson was not aware of the special power of appointment in his will. On the contrary, his attorney, Vincent Brown, testified the December will contained very few changes, one of which was the special power, that he had gone over the will with Mr. and Mrs. Simpson for approximately one hour, and that Mr. Simpson liked the special power as it gave Mrs. Simpson the ability to avoid tax liability in the event of a change in the law. Brown also testified Simpson had had powers of appointment in many of his prior wills.[4] Additionally, Simpson's CPA, Edwin Robinson, testified that in February, 1988, he pointed out the power of appointment to Simpson who responded that he was aware of the provision. Finally, there was testimony Simpson had discussed the provision with a family friend in Montreat, North Carolina.

The only reasonable inference to be deduced from the record is that Simpson was advised of and was aware of the special power. Although Hanahan's evidence may be susceptible of the inference that Simpson did not have a very good understanding of the provision, or that he was unlikely to remember it for any length of time, there is simply no evidence he was "mistaken" about it. Simpson's allegedly declining competency is simply insufficient grounds upon which to invalidate the provision. Accordingly, we find the trial court properly directed a verdict against Hanahan on this issue.[5]

## 2. DEAD MAN'S STATUTE

Prior to trial, Hanahan moved to exclude the testimony of numerous witnesses as violative of the Dead Man's Statute, S.C.Code Ann. § 19–11–20 (1985). Essentially, she sought to exclude the testimony of Simpson's immediate family mem-

---

4. The prior powers of appointment were all general, as opposed to special, powers.

5. Hanahan gives much credence to the fact that Mrs. Simpson did not understand the special power. This adds little support to Hanahan. Mrs. Simpson testified that the existence of the special power was explained to Simpson at the Dec. 23, 1987 meeting, but that she didn't quite understand it. She also testified the special power was Mr. Simpson and Attorney Brown's idea. Clearly, this testimony demonstrates Simpson was, in fact, aware of the provision.

bers,his son-in-law, his former son-in-law, his granddaughters, his niece, his secretary of 40 years, and various family friends. The trial court, for numerous reasons, ruled the Dead Man's Statute inapplicable to the case.[6]

 The South Carolina Dead Man's Statute, S.C.Code Ann. § 19–11–20 (1985) provides, in pertinent part:

> [N]o person who has a legal or equitable interest which may be affected by the action shall be examined in regard to any transaction or communication between such witness and a person(now) deceased, . . . as a witness against a party prosecuting or defending the action as executor, administrator, heir-at-law, next of kin, assignee, legatee, devisee or survivor of such deceased person when such examination or any judgment in such action can affect the interest of such witness. . . .

Essentially, the rule prohibits any interested person from testifying concerning conversations or transactions with the decedent if the testimony could affect his or her interest. *See Long v. Conroy*, 246 S.C. 225, 143 S.E.2d 459 (1965). The rule is founded on the principle that it is against public policy to allow a witness thus interested to testify as to such matters when such testimony, if untrue, cannot be contradicted. *Trimmier v. Thomson*, 41 S.C. 125, 19 S.E. 291 (1894); *Harris v. Berry*, 231 S.C. 201, 98 S.E.2d 251 (1957). Because this statute is an exception to the general rule of witness competency, it requires a restrictive reading on which the party requesting its muzzling effect bears the burden. *See Havird v. Schissell*, 252 S.C. 404, 166 S.E.2d 801 (1969); James F. Dreher and W.M. Von Zharen, *A Guide to Evidence Law in South Carolina*, 21–22 (2nd Ed.1987).

The Dead Man's Statute has been sharply criticized in

---

6. The court declined to apply the statute for a number or reasons, one of which was its belief the statute did not apply in an action to void a will. There is no South Carolina authority supporting this ruling; on the contrary, the statute has previously been applied in will contests. *See Havird v. Schissell*, 252 S.C. 404, 166 S.E.2d 801 (1969). We nonetheless affirm in result as we find a majority of the testimony properly admitted pursuant to exceptions to the Dead Man's Statute.

recent years.[7] Professor McCorrnick calls it a "blind and brainless" technique which, in seeking to avoid injustice on one side, ignores the equal possibility of creating injustice to the other. 1 *McCorrnick on Evidence* § 65 (4th Ed.1992). It has also been disparaged by numerous other commentators. See 2 Wigmore *Evidence* § 578 (1979); Mueller & Kirkpatrick, *Evidence* § 6.1 at 504; *Dead Man's Statutes as Affected by Rule 601*, 50 A.L.R.4th 1238 (1986); Note, T*he New Federal Rules of Evidence and South Carolina Evidentiary Law: A Comparison and Critical Analysis*, 28 S.C.L.Rev. 481, 498–501. In response to such criticisms, the courts of this state have strictly construed the rule and endeavored to limit its applicability to cases which clearly fall within its intended scope. 28 S.C.L.Rev. at 498–501. It has been suggested that, "[i]f the legislature is unwilling to repeal the statute, then the courts should continue to give the statute the narrowest possible application, as in probate cases, for example, where the substantive aspect of the rule would clearly predominate." *Id.* at 500–501 (*citing* 3 Weinstein § 601.03, at 601–20). Bearing these principles in mind, we examine the applicability of the statute to this case.

 In light of the harsh consequences resulting from its application, courts have recognized a number of exceptions to the Dead Man's Statute. Although not intended as a complete listing, we summarize a number of situations in which the rule is inapplicable. First, the benefit of the statute may be waived where the party asserting the statute "opens the door," by offering testimony otherwise excludible. *Norris v. Clinkscales*, 47 S.C. 488, 25 S.E. 797 (1896); *Thomas v. Taylor*, 300 S.C. 127, 386 S.E.2d 630 (Ct.App.1989).Second, testimony of the attorney preparing the will is generally held admissible on the ground that the attorney is not an "interested person."*Havird v. Schissell*, 252 S.C. 404, 166 S.E.2d 801 (1969)(attorney not disqualified by reason of his right to ordinary and usual fees which he will derive from the proceeding). *See also Statutes Excluding Testimony of One Person Because of Death of Another as Applicable to Attorneys*, 67 ALR3d 924, § 2. Third, a witness is prohibited from testifying

---

7. The rule has been abrogated by Rule 601 of the Federal Rules of Evidence. Rule 601(b), SCRE, however, retains the disqualification of witnesses as provided by statutes such as the Dead Man's statute.

under the Dead Man's statute only if his or her present or previous interest will be affected by the event of trial. *Riddle v. George,* 181 S.C. 360, 187 S.E. 524 (1936). As such, a person is only disqualified if he or she has a certain or vested legal or equitable interest which may be affected by the direct, legal operation of the judgment. *Long v. Conroy,* 246 S.C. 225, 232, 143 S.E.2d 459, 462 (1965). Fourth, a party may testify against his or her interest. *Devereux v. McCrady,* 46 S.C. 133, 24 S.E. 77 (1896); *Shell v. Boyd,* 32 S.C. 359, 11 S.E. 205 (1890). Fifth, a witness may testify to a transaction between the deceased and a third party. *Moore v. Trimmier,* 32 S.C. 511, 11 S.E. 548 (1889). Sixth, as the statute is directed against the competency of a witness, rather than the transaction or communication itself, it does not prohibit the introduction of documentary evidence. *See Harris v. Berry,* 231 S.C. 201, 98 S.E.2d 251 (1957). Seventh, this Court has recognized the majority doctrine that "notwithstanding the testimony of an interested witness may generally fall within the inhibition of the statute as to evidence of transactions or communications with a decedent, he may testify to the acts, demeanor or conduct of the decedent where the testimony is offered merely for its bearing on an issue of mental competency." *Havird v. Schissell,* 252 S.C. 404, 166 S.E.2d 801 (1969)(Emphasis supplied). *See also Meadows v. Meadows,* 196 W.Va. 56, 468 S.E.2d 309 (1996)(discussion as to why testimony of interested party concerning communications with decedent are properly admissible if used to demonstrate, not the truth of the matter asserted, but the basis of the witnesses' opinion concerning the decedent's mental capacity). *See also Whitley v. Redden,* 276 N.C. 263, 171 S.E.2d 894 (1970); *Smith v. Smith,* 222 Ga. 694, 152 S.E.2d 560 (1966).

We find virtually all of the testimony complained of in the present case falls within one or more of the enumerated exceptions. The testimony primarily objected to by Hanahan is that of Simpson's attorney (Vincent Brown), his son-in-law (Jack Kuhne), his granddaughter (Caroline Kuhne), and his wife (Kate M. Simpson). We shall address each of these witnesses seriatim.

As an initial matter, we note that the majority of these individuals' testimony relates to their observations of Simpson and forms the basis of their opinions of his capacity.

In light of the fact that Hanahan challenged Simpson's testamentary capacity, this testimony was integral to establishing his mental status. Accordingly, we find this testimony was properly admitted under the "mental capacity" exception to the Dead Man's Statute. *Havird, supra.*

As to attorney Brown, we find no disqualification. As the attorney who drafted the will, he is not an "interested person." *Havird, supra.* His testimony was properly admitted and in no way violated the statute.

Next, we find Simpson's son-in-law, Jack Kuhne, is not a sufficiently interested person to bar his testimony. He is not a beneficiary under the December will and therefore has no present, vested interest in the outcome of the litigation. Moreover, Kuhne, a PR under previous wills, stood more to gain under prior wills than the December will. Accordingly, he was effectually testifying against his pecuniary interest so as to be a competent witness under the statute. *See Devereux v. McCrady, supra; Shell v. Boyd, supra.*

As to Simpson's granddaughter, Caroline Kuhne, she has only a contingent interest under the December will, depending upon whether Mrs. Simpson exercises in the special power of appointment in her favor. As she has no vested legal interest which may be affected by the direct, legal operation of the judgment, *Long v. Conroy, supra,* we find she was properly permitted to testify.

The only person who has a direct, vested interest under the will is Kate Simpson. However, the majority of her testimony consisted of her observations of Simpson's mental competence, and why she believed he was not mistaken as to the contents of his will. Accordingly, it was properly admitted under the "mental capacity" exception. *Havird, supra.* Moreover, Mrs. Simpson stood to gain more under intestacy than under the will. Accordingly, her testimony was against her pecuniary interest and was therefore permissible. *Shell, supra.*

To the extent that any of Mrs. Simpson's testimony may have been objectionable under the statute, we find it is merely cumulative to other testimony which was properly admitted. *McBeth v. Bishop,* 278 S.C. 443, 298 S.E.2d 441

(1982); *Wright v. Graniteville*, 266 S.C. 88, 221 S.E.2d 777 (1976)(even if testimony objectionable under Dead Man's Statute, no reversible error where testimony is cumulative to other testimony establishing the claim).

In sum, under the circumstances of this case, we find no error in the circuit court's refusal to apply the Dead Man's Statute to bar the cited testimony.

## 3. PRIOR BAD ACTS OF HANAHAN

 Hanahan next asserts error in the trial court's admission of evidence of prior acts which reflected on her character.[8] At trial, Hanahan sought to exclude the majority of these items under the Dead Man's Statute. She also sought to exclude a 1972 affidavit of her father on grounds it was too remote. Her objections on these grounds were deemed continuing by the trial court. She now contends this evidence was improperly admitted to demonstrate her bad character. As this was not the basis of her objection below, nor was it the basis of the trial court's observance of a continuing objection, we find the issue unpreserved for review. *Rosamond Enterprises, Inc. v. McGranahan*, 278 S.C. 512, 299 S.E.2d 337 (1983)(appellant may not argue a different ground on appeal than he argued in his objection at trial); *Shayne of Miami, Inc. v. Greybow, Inc.*, 232 S.C. 161, 101 S.E.2d 486 (1957); *White v. Livingston*, 231 S.C. 301, 98 S.E.2d 534 (1957)(party may not argue one ground at trial and an alternate ground on appeal).

 As to that evidence to which Hanahan did properly object at trial, we find no abuse of discretion in the trial court's ruling. *American Federal Bank v. No. 1 Main Joint Venture*, 321 S.C. 169, 467 S.E.2d 439 (1996)(conduct of a trial, including admission and rejection of testimony, is largely within the trial judge's sound discretion, the exercise of which will not be disturbed on appeal unless appellant can show abuse of such discretion, commission of legal error in its

---

8. The evidence includes a 1972 affidavit of her father in a custody battle with her since ex-husband, an affidavit of her housekeeper, Geneva DeKline, which was filed in regard to the 1972 custody battle, letters from Mr. Simpson written between 1974 and 1979, numerous financial records of Hanahan, and records of Hanahan's visits to her psychiatrist.

exercise, and resulting prejudice to appellant's rights). To the extent any of the evidence was improperly admitted, Hanahan has not demonstrated prejudicial error warranting reversal. *Powers v. Temple* 250 S.C. 149, 156 S.E.2d 759 (1967)(to justify reversal based upon improper admission of evidence, appellant must show prejudice and that jury was likely influenced thereby).

## 4. SANCTIONS

Finally, Hanahan challenges the trial court's imposition of $548,317.38 in sanctions under the South Carolina Frivolous Civil Proceedings Sanctions Act(Act), S.C.Code Ann. § 15–36–10 et seq. (1995 Supp.). We agree with Hanahan that sanctions are not warranted under the facts of this case and,accordingly, reverse the award of sanctions.

The determination of whether attorney's fees should be awarded under the Frivolous Proceedings Act is treated as one in equity. *Kilcawley v. Kilcawley,* 312 S.C. 425, 440 S.E.2d 892 (Ct.App.1994). In reviewing the award in issue, this Court may take its own view of the preponderance of the evidence. *Id.*

The Act, *§* 15–36–10, provides, in part, as follows:

Any person who takes part in the procurement, initiation, continuation or defense of any civil proceeding is subject to being assessed for payment of all or a portion of the attorney's fees and court costs of the other party if:

(1) he does so primarily for a purpose other than that of securing the proper discovery, joinder of parties, or adjudication of the claim upon which the proceedings are based; and

(2) the proceedings have terminated in favor of the person seeking an assessment of the fees and costs.

(Emphasis supplied). Section 15–36–20 creates a presumption that a person taking part in the initiation or continuation of proceedings acted with a proper purpose "if he reasonably believes in the existence of facts upon which his claim is based" and either (1) reasonably believes under the facts that his claim maybe valid under existing or developing law, or (2)

relies upon the advice of counsel, sought in good faith and given after full disclosure of all facts within his knowledge.

The trial court ruled Hanahan's primary purpose in instituting and continuing the proceedings was not to secure proper discovery, or adjudication of the proceedings, and that she could not reasonably have believed in the existence of the facts upon which her claim was based. Hanahan contends this ruling is in error. She asserts denial of summary judgment on her causes of action for undue influence and lack of testamentary capacity precludes an award of sanctions since, if there is evidence worthy of submission to the jury, the claims cannot be frivolous within the meaning of our act. We agree.

There is a split of authority as to whether sanctions may be awarded under Frivolous Proceeding acts notwithstanding the denial of summary judgment. A number of cases hold the denial of a directed verdict or summary judgment motion does not preclude a later determination that the plaintiff's claims were frivolous and groundless. *Grant v. Farnsworth*, 869 F.2d 1149 (8th Cir.1989),*cert. denied*, 493 U.S. 898, 110 S.Ct. 252, 107 L.Ed.2d 202 (1989); *Reyna v. General Group of Companies*, 15 Kan.App.2d 591, 814 P.2d 961 (1991); *Stoll v. Adriansen*, 122 Wis.2d 503, 362 N.W.2d 182 (Ct.App.1984); *Napoleon Livestock Auction v. Rohrich*, 406 N.W.2d 346 (N.D.1987). Other courts, however, hold that a party who survives pre-trial motions to dismiss and for summary judgment are not subject to sanctions after a trial on the surviving claims. *Hampton Bank v. River City Yachts*, 528 N.W.2d 880 (Minn.Ct.App. 1995); *Kopach v. Olympia and York*, 215 A.D.2d 304, 627 N.Y.S.2d 12 (1st Dept.1995). The theory behind these cases is that if a case is submitted to the jury, it cannot be deemed frivolous. We concur with the latter view.

Section 15–36–20 of our Frivolous Proceedings Act creates the presumption of a proper purpose if the person initiating litigation "reasonably believes under the facts that his claim maybe valid under existing or developing law." Here, Hanahan clearly submitted evidence supporting her claims,999[9] which is evidenced by the trial court's denial of summary judgment on her claims for undue influence and lack

---

9. Two of her experts testified that her father was incompetent prior to 1987.

of testamentary capacity. It is simply untenable to suggest that, notwithstanding the trial court was convinced the issue was one for the jury, Hanahan did not reasonably believe in the existence of her claim. Accordingly, under these facts, we find sanctions were improper under our Frivolous Proceedings Act. We hold that where a party survives a summary judgment motion, it is not subject to sanctions after a trial on the merits of the surviving claims. Accordingly, the award of sanctions against Hanahan is reversed.

The judgment below is

**AFFIRMED IN PART; REVERSED IN PART.**

FINNEY, C.J., and TOAL, MOORE and BURNETT, JJ., concur.