### 9657

#### EX PARTE McKIE ET AL.

#### IN RE McKIE'S ESTATE ET AL.

(91 S. E. 978.)

1. WILLS — CONTEST — PRESUMPTIONS—KNOWLEDGE OF CONTENTS.—Ordinarily, proof of a writing purporting to be a will and signed and witnessed according to the statute raises the presumption that the testator knew the contents thereof, and the burden is on contestant to show the contrary.

2. Wills — Contest—Presumption—Knowledge of Contents—Special Circumstances.—Where the circumstances surrounding the transaction cast doubt on whether testator knew the contents of the purported will, there should be some proof apart from mere execution of the instrument that testator knew its contents, and the jury must determine whether testator had such knowledge.

3. Wills — Contest — Instructions — Knowledge of Contents — Evidence.—Where the evidence showed that testatrix was 84 years old, and that her sight was bad, that she had been abed for many weeks, that a doctor was secured from a distant city instead of from the neighborhood, and was asked by proponents if testatrix would be injured by executing a will, that there was bad feeling between the children to whom the estate was given and who resided with testatrix and a son who resided elsewhere and who received only a nominal bequest, that testatrix was unable to direct the pen in signing, that no statement was made by testatrix or any one in the room when the will was executed, that it was a will, and that the relations between testatrix and a son excluded from the estate were friendly, it was proper for the Court to charge that the presumption that the testator knew the contents of the paper was not conclusive, and that the surrounding circumstances might be so suspicious as to require affirmative evidence, and that the jury must determine that question by the preponderance of the testimony.

4. Wills—Contest—Testamentary Capacity—Questions of Law and Fact.—How much capacity is required to make a will is a question of law; whether testator had that much is a question of fact.

5. Wills — Contest — Testamentary Capacity — Question for Jury— Evidence.—Where the testimony showed that testatrix was very old and nearly blind, that she was physically unable to write her name, and was propped up in bed to sign the instrument, that she did not say the instrument was a will, nor did any of those present say so, it was a question for the jury whether she had testamentary capacity, though all the witnesses to the will and the attending physician and others testified that she had mind enough to make the will.

6. Wills — Contest— Evidence—Relevancy—Undue Influence.—In proceedings to contest a will for undue influence, declarations by a devisee, showing an intention to influence testatrix to discriminate against a son, are relevant if competent.

7. Trial—Questions for Jury—Credibility of Witnesses.—The credibility of a witness, in law, is always for the jury.

8. Wills — Contest—Evidence—Hearsay—Declaration of Intention. —In proceedings to contest a will for undue influence, a declaration by a devisee, showing an intention to induce testatrix to exclude contestant, is not hearsay, but is original testimony to establish intent, and is admissible, since the presence of a design or plan to do a given act has probative value to show that the act was in fact done.

9. Evidence—Declarations—Intent.—A declaration by a person as to his intention is the best·evidence of such intent, and in connection with the circumstances may be sufficient to establish intent.

10. Wills — Contest—Declaration—Interest of Declarant.—A declaration showing an intention to induce testatrix to make a will excluding a son is admissible to show undue influence, though made before the will was executed, since its admissibility does not depend on its being against interest.

11. Wills — Contest — Declarations — Declaration Before Will. — Declarations showing an intent to exercise undue influence made before the execution of the will are admissible in view of the presumption that the state of mind once proved to exist continued, and was carried into effect by the subsequent acts.

12. Wills—Contest—Declarations—Admission Against Other Donees. —The fact that a declaration by one devisee, showing an intent to exercise undue influence injuriously affected the interests of the other donees in proceedings to contest the will, does not render it inadmissible, where all but two of the other donees were connected by similar declarations with the undue influence and the interests of those two would be only slightly diminished by a distribution as intestate property.

13. Wills—Contest—Death of Declarant.—A declaration by a devisee, showing an intention to exercise undue influence on testatrix, is not rendered inadmissible in contest proceedings by the death of declarant before trial.

14. Wills — Contest—Declaration—Relevancy—Undue Influence.— Declarations by devisees, showing an intention to exercise undue influence, are admissible though there was no testimony to show a connection between the intent of declarants and the acts of testatrix where the will as executed conformed to the declared intention, since the connection between the two was then not a wild guess, but an inference which appealed to the judgment of the jury.

Before Sease, J., Edgefield, October, 1915.    Affirmed.

Proceedings to contest the will of Mrs. Margaret L. McKie, in which Daniel McKie and others were proponents and Josiah McKie contestant. Decree for contestant, and proponents appeal.

Footnote.—As to admissibility of declarations of legatee or devisee on issue of undue influence, see 21 A. & E. Ann Cas. 50, 38 L. R. A. (N. S.) 732 to 744, 38 L. R. A. (N. S.) 740. Necessity of affirmative proof of knowledge of contents·of will by testator unable to read, see 14 A. & E. Ann. Cas. 876. As to signature by hand of unconscious person, see notes in L. R. A. 1915b, 678.

The following is the charge of the Court and the exceptions of appellant:

Mr. Foreman and Gentlemen: To put you at ease along that line, I have already made arrangements for the sheriff to get your supper for you immediately after this charge is made; and he will either bring it to you or conduct you to the hotel. You are to try this case, gentlemen, according to the law and evidence; you have taken an oath that you will well and truly try this case according to the law and the evidence; you have no interest in the outcome of the case, except to render a proper verdict. You have no friends that you are to take care of as jurors; neither have you any enemies that you are to punish by your verdict; you and I are totally disinterested parties; we are not here to do anything but the right thing according to our best understanding; you will not be influenced by anything that is improper for you to consider. The question that I propose to submit to you reads as follows, and you will have this small piece of paper with you, and also the alleged will, in the jury room, and nothing more: Is the paper presented for probate, and dated 3d day of October, 1912, the last will and testament of Margaret L. McKie? And you will answer, "Yes or No," and write your name, and the word "Foreman" under it. That is the only question that is submitted to you. You will answer that according to the law and evidence; you cannot make any law of your own; you must take the law as given you by the Court; and just here there are certain propositions of law that I desire to call to your attention along the lines of the requests to charge on both sides, and the requests to charge. I cannot state all the law in one proposition, because it would take too long a sentence, covering a page or more, and you would not understand it, very likely, as well as if I should instruct you in shorter propositions of law and the requests that are written out.

Now, before that: We are not here to make the will of Margaret L. McKie; we are not here to say, if you conclude

that it is the will of Margaret L. McKie, that it is a just will or an unjust will, because the law says, and it is the law, that a person having property has the right and privilege of making any disposition of their property that they please. The only question is: Is the paper that has been introduced in testimony the will of Margaret L. McKie? If it is not her will, then your answer to this question will be, "No;" if it is her will, then the answer to the question will be, "Yes." The law prescribes how a will shall be made. Under section 3564, and I believe the enactment of this law was by the legislature in 1824, says: All wills and testaments of real and personal property shall be in writing, and signed by the party so devising the same, or by some other person in his presence and by his express directions, and shall be attested and subscribed in the presence of the said devisor, and of each other, by three or more credible witnesses, or else they shall be utterly void and of none effect. That does not mean that a blind person cannot make a will; that does not mean that a person who is totally blind cannot make a will, but the statute, in order for a will to be valid, must be complied with and you must find that it has been complied with from the testimony; it may be inferred from the testimony; all conclusions of juries are inferences from the testimony.

I charge you, gentlemen, that the proponent of a will is called upon to prove that it is the will of the deceased by the preponderance of the evidence. That does not necessarily mean the greater number of witnesses, but it means by the greater weight of the evidence. It does not mean that it must be proven to be the will of the deceased beyond a reasonable doubt; but it simply means that the testimony must preponderate in favor of the validity of the will. For example: If you take all the testimony in favor of the will, and put it in an imaginary scale or balances on the one side thereof, and take all the testimony against the will, or the validity thereof, and place on the other side of the imaginary scales or balances, and if it stands evenly balanced in your

mental picture, in your experiment, then the will cannot stand, and your answer to that question will be "No ;" but if .the side in your mental picture in which you have placed all the testimony in favor of the will preponderates in the slightest degree over the evidence against it, then there lies the preponderance, and you would write a verdict in the form of "Yes" to this question. That is what I mean by preponderance of the evidence.

A great deal has been said about presumptions. I charge you as a general principle of law applicable to all presumptions in this case, that all presumptions are rebuttable. There is no conclusive presumption in this case, and when I speak of presumption I mean a presumption that is rebuttable.

Now, taking up the requests of the proponent of the will, I charge you as follows:

"(1) That the law in this State puts no restraint upon the power of a citizen to dispose of his or her property as he sees proper. He may give all of his property to one or more of his children, and exclude the balance of his children from participation in his estate; or he may give his property to a stranger, if he sees proper to do so." I charge you that.

I charge you this as requested:

"(2) When the proponent of a will proves the formal execution of it, including the attestation and subscription, as required by law, a presumption of testamentary capacity arises, since every adult person is presumed to be sane until the contrary appears." I charge you that, and in connection I desire to read you a further sentence from a case from which that is quoted. Now, that is in addition to the other request. I read from volume XXXI, S. C. L. (2 Richardson's Reports), page 236: "Where a testator is of sound mind his knowledge of the contents of the will, as of any other instrument, is presumed from the fact of execution. If he be of doubtful capacity, the law requires that the presumption arising from the fact of execution, should be confirmed by

additional and more direct proof of assent. The character of that proof is to be considered." And I add, is to be considered by the jury, or rather, all the testimony is for the jury.

" (3) When the formal execution of a will is proved, a *prima facie* case is made out, and the burden is then on the contestant to show the invalidity of the will." I charge you that.

" (4) When a testator is of sound and disposing mind and memory at the time of the execution of a will, his knowledge of its contents, as of any other instrument in writing, will be presumed from the fact of execution." I charge you that, and in connection I desire to read from the Enc. of Evidence, page 258: "The general presumption is that a testator, having executed his will, had knowledge of its contents, but this presumption is never conclusive, and the surrounding circumstances may be so suspicious as to require affirmative evidence of this fact." Also on page 259, footnote: "That the testator did know and approve of the contents of the alleged will is therefore part of the burden of proof assumed by every one who propounds it as a will. This burden is satisfied, *prima facie,* in the case of a competent testator by proving that he executed it. But if those who oppose it succeed by a cross-examination of the witnesses, or otherwise, in meeting this *prima facie* case, the party propounding must satisfy the tribunal affirmatively that the testator did really know and approve of the contents of the will in question before it can be admitted to probate." I charge you that, and I simply adopt the language as my own charge on that point to that extent.

The respondent, Josiah McKie, has requested me to charge you the following propositions of law. I take it that this first request is a correct analysis of the statute that I read in your hearing, to wit, section 3564. It only elaborates and explains that section that I read to you; that is, section 3564 of the Code of Laws of South Carolina.

"(1) That under section 3564 of the Code of Laws of South Carolina, it is enacted, and it is the law, that all wills shall be in writing, and be signed by the party purporting to enter into the same, or by some other person in his or her presence, and by his or her express direction; and the jury is charged that if the alleged will in this case of Margaret L. McKie was not signed by her, but by her son, Daniel McKie, in her presence, but not by her expressed direction, then they must find that it was not her will, for the statute requires that the will must be either signed by her, or by some other person in her presence, and by her expressed direction, or otherwise it is null and void." I charge you that, gentlemen; and I charge you also that the statute says nothing about where one person assists another in signing a will; and I charge you that if another person assists the maker of a will, the alleged maker of a will, of her own signature, then that would be a sufficient compliance with the law on that point.

"(2) That whilst 'expressed direction' may be inferred from circumstances surrounding the transaction, yet the jury must be satisfied that such expressed directions were given by the testatrix, before they can find in favor of the will." I charge you that in connection with what I have already charged you.

"(3) On the question as to whether or not the paper in question, purporting to be the last will and testament of Margaret L. McKie, was her last will and testament, the jury is charged that unless they find from the preponderance of the testimony that she knew it was her will, and was acquainted with its contents, and executed it as such, they must find against the will. They must be satisfied that she knew its contents, or even if she executed it, is is not her will." I charge you that, gentlemen.

"(4) The jury are the judges of her mental capacity at the time of the alleged execution of the paper in question, and if they find for any reason that she was of doubtful

capacity, then before they can find for the will they must go further and find that she gave instructions for its making, or that it was read over to her and that she understood it." I charge you that, and in that connection I desire to instruct you on the matter of undue influence. You will notice that the law says undue influence; it does not say influence, because I do not suppose any will ever was made unless something influenced the making of the will. The influence, which is undue and sufficient to invalidate a will, must be so great as to constrain the inclinations of the testator, to overbear and conquer his will, and make him the obedient, though reluctant, agent of another's dictation in the testamentary disposition of his property. His free agency must be overcome, so that the instrument does not express his will, but the will of another. That is what I mean when I say "undue influence." Therefore I charge you that if the alleged testatrix was unduly influenced in the making of this paper as her will, then you will find against the will, and answer the question, "No."

"(5) Whilst it is so, that proof of the execution of a will raises a presumption that the testatrix knew the contents of the will and approved it, yet that presumption is only *prima facie,* and is rebuttable; and the jury are the judges whether by the testimony the presumption has been rebutted or not, and if in any way they are satisfied that the presumption has been shaken then they are to say from all the evidence whether they are satisfied that the testatrix knew of the contents and approved of the will, and if on all of the evidence they are not so satisfied, they should find against the will." I charge you that.

Now, in the sixth request to charge I leave the words "was blind;" I prefer to leave out the words, "was blind," because that might be charging on the facts. I charge you the sixth request with that modification.

"(6) The jury is charged that if they find that the testatrix, at the time of the alleged execution of the will, was of

doubtful capacity, then before they can find in favor of the will they must be satisfied by the preponderance of the testimony, that she gave instructions for the making of the will, or that it was read over and explained to her, and she understood it and approved of it as her will." I charge you that, but I charge you also, in that connection, that if you find that that was her will, giving emphasis to "will"—that is, that it was no one else's will, that it was no one else's will—that necessarily carries with it that she knew the contents of the will, and that it was her will and was made without undue influence; even then, of course, you would find accordingly.

The main question, and the sole question is, and all the evidence has been introduced to throw light on this question, is the paper presented for probate and dated 3d day of October, 1912, the last will and testament of Margaret L. McKie? Now, you are entitled to have this with you in the jury room, on that question, and that is all. Whatever your verdict is, you will write it out in this shape, "Yes," or "No," and sign your name and write the word "Foreman" under it. You will bring in a sealed verdict, and when you have agreed on your verdict, you will seal it up, put it in an envelope, put it in your pocket, knock on the door, inform the sheriff that you have agreed, and he will let you out; say nothing about your verdict and be back in Court at 9:30. Retire.

Exceptions: First. Because his Honor, the presiding Judge, having allowed proponents' fourth request to charge, to wit: "When a testator is of sound and disposing mind and memory at the time of the execution of a will, his knowledge of its contents, as of any other instrument in writing, will be presumed from the fact of execution"—erred by charging further in relation thereto: "That the testator did know and approve of the contents of the alleged will is therefore part of the burden of proof assumed by any one who propounds it as a will."

Second. Because his Honor, the presiding Judge, having allowed proponents' fourth request to charge (*supra*) and the respondent, Josiah McKie, having failed to present any testimony whatsoever, that the testatrix did not know of and approve the contents of her will, his Honor erred, as a matter of law, in refusing proponents' third ground of motion for a new trial.

Third. Because his Honor, the presiding Judge, erred in allowing the fourth request to charge submitted in behalf of the respondent, Josiah McKie, to wit: "The jury are the judges of her mental capacity at the time of the alleged execution of the paper in question, and if they find for any reason that she was of doubtful capacity, then before they can find for the will they must go further and find that she gave instructions for its making, or that it was read over to her, and that she understood it"—the error being, it is respectfully submitted, that or which tended to show, any doubt as to the testamentary capacity of the testatrix, the rule of doubtful capacity as stated by his Honor imposed upon proponents a burden of proof which the law does not impose, thereby the jury was misled to the prejudice of proponents.

Fourth. Because his Honor, the presiding Judge, erred in allowing the sixth request to charge submitted in behalf of respondent, Josiah McKie, to wit: "The jury is charged that if they find that the testatrix, at the time of the alleged execution of the will, was of doubtful capacity, then before they can find in favor of the will they must be satisfied by the preponderance of the testimony, that she gave instructions for the making of the will, or that it was read over and explained to her, and she understood it and approved of it as her will"—the error being, it is respectfully submitted, that there being no testimony in the cause, which showed, or which tended to show, any doubt as to the testamentary capacity of the testatrix, the rule of doubtful capacity, as stated by his Honor, imposed upon proponents a burden of

proof which the law does not impose, and thereby the jury was misled to the prejudice of proponents.

Fifth. Because his Honor erred in charging the jury as follows: "I charge you, as a general principle of law applicable to all presumptions in this case, that all presumptions are rebuttable. There is no conclusive presumption in this case, and when I speak of presumption I mean a presumption that is rebuttable"—the error being that his Honor thereby charged on the facts of the case, to wit, "There is no conclusive presumption in this case," said statement having the effect of removing from the consideration of the jury the question whether or not the presumptions which exist in the case were rebutted by the testimony.

Sixth. Because his Honor, the presiding Judge, erred in admitting in evidence the testimony of Mrs. Bettie Wood as to the statement alleged by her to have been made to her by James McKie, now deceased, the said Jas. McKie, at the time that said statements were alleged to have been made, not having any interest in the matters in controversy in this proceeding; and it is respectfully submitted that the statements so alleged to have been made in relation thereto constitute hearsay testimony.

Seventh. Because his Honor, the presiding Judge, erred in admitting in evidence the testimony of the witness, John M. Wood, as to the statements alleged by him to have been made to him by James McKie, now deceased, the said James McKie, at the time said statements were alleged to have been made not having any interest in the matters in controversy in this proceeding; and it is respectfully submitted that the statements so alleged to have been made in relation thereto constitute hearsay testimony.

*Messrs. McCollough, Martin & Blythe,* for appellant, cite: *As to presumption as to testamentary capacity:* 2 Rich. L. 236; 49 S. C. 159. *Burden of proof as to undue influence:* 86 S. C. 477; 51 Am. Dec. 652. *Undue influence:*

Cheves. 1; Schouler Wills 228; Williams Exors. 34; 49 Am. Dec. 629, 630. *Declarations inadmissible:* 25 Pa. St. 456; 54 Pa. St. 222; 93 Am. Dec. 691; 99 Mass. 127, 128; 80 Am. St. Rep. 617; 58 Am. St. Rep. 400; 13 Enc. Ev. 289.

*Messrs. Sheppard Bros.,* for appellants, cite: *As to execution of will:* Civil Code, sec. 3564; Gardner Wills 207; 4 Cyc. 1104; 3 Rich. 16; 39 S. C. 518. *Burden of proof:* 86 S. C. 477; 49 S. C. 165. *Refusal of new trial:* 66 S. C. 75. *Rule of doubtful capacity:* 1 Bailey 93; 2 Rich. 229; 3 Hill 73; 12 Rich. 242; Hearsay Evidence, Jones Ev. (2d ed.) 374. *Declarations against interest:* McKelvey Ev. (2d ed.) 318, 321; Wigmore Ev., sec. 1466; 4 Enc. Ev. 90; 16 Cyc. 1120; Jones Ev. (2d ed.), sec. 253; 89 Am. St. Rep. 390; 17 Cyc. 793, 806, 808. *Policy of rules governing proof of wills:* 39 S. C. 531; Schouler Wills, sec. 78. *Exclusion of children:* 4 McC. 195.

*Messrs. N. G. Evans* and *Hendersons,* for respondent, cite: *As to presumption from execution of will:* 14 Enc. Ev. 258, 259; Schouler Wills (2d ed.), secs. 155, 240. *Objections to charge should be called to attention of the trial Court:* 23 S. C. 231, 232; 88 S. E. 442. *Evidence of assent in execution:* 1 Bailey 95; 3 Hill 341; 2 Rich. 238; 12 Rich. 232; 1 Jarman Wills 64, 65; 14 Enc. Ev. 261; 21 N. J. Eq. 561, 562. *Harmless error:* 89 S. C. 378; 95 S. C. 302; 88 S. E. 26; 85 S. E. 298. *Declarations admissible:* 2 Greenleaf Ev., sec. 690; 8 Rich. L. 198.

*Mr. N. G. Evans* also cites: *As to burden of proof:* Civil Code, sec. 3581. *Evidence showing undue influence:* 1 Gardner Wills 194; 30 A. & E. Enc. of L. (2d ed.) 585; 119 Ala. 641; 24 South. 459; 127 Mich. 607; 86 N. W. 1036; 35 N. Y. 559; Chaplin Wills 173; 90 Va. 849; 19 S. E. 314; 67 Vt. 443; 32 Atl. 255. *Jury to determine mental capacity:* Bailey's Law 92; Hill 74; 3d Hill's Law 346; 2d

Rich. Law 236; 86 S. C. 479. *Execution of will:* 3 Strob. L. 299. *Declarations admissible:* 1 Enc. Ev. 504, 510, 523; 5 Rich. Eq. 128; 79 S. C. 54; 47 S. C. 467; 17 S. C. 142; Chamberlayne's Best on Evidence, p. 487; 12 Mass. 163; 31 Vt. 443; 88 N. C. 208; 104 Ind. 70; 13 Bush. (Ky.) 163; 59 Me. 162; 8 N. H. 366; 18 S. C. 492; 6 Enc. Ev. 447; 7 Enc. Ev. 610; 145 U. S. 285.

March 27, 1917.

The opinion of the Court was delivered by Mr. Justice Gage.

This cause was tried before a jury, and the issue was, will or no will. The verdict was "no will." The will was proven in the probate Court by James and Daniel McKie, sons and executors. The probate Court sustained the will, and the trial in the Circuit Court was on appeal therefrom, was *de novo,* and was before a jury. Before the instant trial James had died, unmarried and intestate, we assume.

The history of the case is this:

Mrs. Margaret L. McKie, a widow some 84 years of age, lived in Edgefield county; and in the house with her there lived two unmarried daughters, two sons and a married daughter. Another married daughter lived apart; and her eldest son, Josiah, lived in Aiken county, some miles away from his mother. Thus there were seven children. The mother died in December, 1912, and there was thereafter filed in the probate Court a purported will of hers, made in the month of October, 1912. Thereby the testatrix devised the whole of her estate, valued at $5,000 in money and 300 acres of land, to her children other than Josiah; to him she bequeathed $10.

The instrument was signed "Margaret L. McKie;" the testatrix only held the pen; it was guided by the son, Daniel, so as to describe the name, and a witness suggested that;

no word was uttered at the signing by the witnesses to the will, or by the testatrix, or by any one else, to indicate that the document was a will; the witnesses presumed it was a will from the circumstance that three persons were called to witness the paper.

The testatrix died of a leaky heart, and was abed six months before the end; and while abed the alleged will was executed. The instrument was prepared by Mr. J. William Thurmond; but he did not testify at the trial.

There are seven exceptions, but the appellant has argued but four issues. They are these: (1) The Court rightly charged the proponents' fourth request that when a testator of sound mind has executed a will in due form, his knowledge of its contents is thereby presumed; but the Court wrongly added thereto, "That the testator did know and approve of the contents of the alleged will is therefore part of the burden of proof assumed by every one who propounds a will." (2) The Court rightly charged as proponents' fourth request that when a testator is of sound mind at the execution of the will, then his knowledge of its contents is presumed; but the Court wrongly refused to set the verdict aside, upon the ground urged by the proponents for a new trial that the contestant failed to present any evidence that the testatrix did not know the contents of the will. (3) The Court erred in charging, as the contestant's fourth request, that the jury was the judge of the testatrix's mental capacity at the time of the alleged execution; and if the jury find for any reason that the testatrix was of then doubtful capacity, then before they can find for the will they must go further and find that she knew its contents, because appellants say there was no particle of testimony tending to show doubtful capacity. (4) The Court erred in admitting the testimony of Mr. and Mrs. Wood, touching a declaration to them of James and a declaration of Daniel, about the intent of James and Daniel with reference to the exclu-

sion of Josiah by the testatrix. Let the charge, the request, and the exceptions be reported.

The first, second, and third issues are so closely allied that they overlap one another; indeed, they present the same issue in differing phases.

The first issue and exception which the appellant makes is not predicated upon an accurate statement of that which the Court did charge. The exception sets out only a part of what the Court charged, and it does not set that out in sequence, but in disordered fragment.

The proponents' fourth request is sound as far as it goes. It dealt with a person of sound disposing mind and memory. It only stated that the contents of the will of such a one would be presumed to be known to the maker. It did not suggest a person who was aged and infirm, and who made a will under all the circumstances testified to in the instant case. It is true that ordinarily the proof of a paper writing, signed and witnessed according to the statute, and purporting to be a will, entitles it to be regarded as such. And it will be then presumed, as matter of fact, that the testator knew the contents of the paper. The contestant must show the contrary. *Kaufman* v. *Caughman,* 49 S. C. 159, 27 S. E. 16, 61 Am. St. Rep. 808; *Mordecai* v. *Canty,* 86 S. C. 476, 68 S. E. 1049. While therefore the proponent of a paper purporting to be a will must of course prove that the testator knew its contents, yet that is sufficiently done, in the first instance, when the paper is presented and its execution is in due form of law. See Nott, J., in *Warley* v. *Warley,* cited in 46 S. C. L. (12 Rich.) 249.

On the other hand, if all the circumstances which surround the transaction, and, as disclosed by the testimony, cast doubt upon whether a testator did know what was in the will, then there ought to be some proof, apart from the mere execution of the instrument, that the testator knew its contents; and the jury then must judge if the testator did have knowledge of its contents.

*Boyd* v. *Boyd,* 21 S. C. L. (3 Hill) 341; *McNinch* v. *Charles.* 31 S. C. L. (2 Rich.) 229; *McKnight* v. *Wright,* 46 S. C. L. (12 Rich.) 232.

The circumstances in the instant case relied on to show lack of knowledge are these: Shortly before the instrument was executed the doctor was asked by the proponents if the lady would be injured to execute a will; the lady was abed, and had been for many weeks. She was 84 years old, and her sight was bad; she was unable to direct the pen so as to describe her name; the sending to distant cities for a doctor instead of getting one from the vicinage; the existence of bad feeling betwixt those children who got the estate and who resided with her and Josiah, that is expressly admitted in appellants' argument; the exclusion by the will of Josiah from its provisions, except for a nominal bequest; the friendly relation betwixt Josiah and his mother as testified to by him; the absence of any statement made by the testatrix, or by any one present in the room at execution, that the paper being signed was a will; the denial by the other children of Josiah's presence with his mother more than once. We have not considered the questioned testimony of the Woods. The proponents recognized the force of these circumstances, and to overcome them they offered testimony that Daniel had read the will to his mother, and that the testatrix had told Miss Danforth why Josiah was excluded from the will. But the Court had no right to pass upon the issue thus made; it was the province of the jury to find, first, whether the testimony did cast doubt upon the testatrix's knowledge of the contents, and, if it did, then did all the testimony by its preponderance show knowledge of the contents? There was evidence on both sides of the question. The Court did not charge the jury that when the contestant introduced testimony which tended to cast doubt upon the testatrix's knowledge of contents, that the burden was then shifted on the proponents to prove knowledge; the charge was, that if the

circumstances cast doubt upon whether the testatrix had knowledge of the contents, then other testimony must show knowledge.

The contestant's fifth request, duly allowed and not accepted to, stated the same postulate plainly. That is to say, in such a case the contestant would put into one side of the scale the circumstances which tended to show lack of knowledge; the proponents would put into the other side of the scale the will duly signed, and along with it testimony tending to show knowledge; that side which preponderated would be entitled to the verdict. The Court so charged the jury just before it considered the request to charge.

The contestant's sixth request, allowed and excepted to, but not specifically argued, directed the jury that it must be guided by the preponderance of the testimony. And to that request the Court added this in its own words:

"I charge you that, but I charge you also, in that connection, that if you find that that was her will, giving emphasis to 'will'—that is, that it was no one else's will, that it was no one else's will—that necessarily carries with it that she knew the contents of the will, and that it was her will and was made without undue influence; even then, of course, you would find accordingly."

The first exception is overruled.

The second exception and issue is directed to the Court's refusal to set the verdict aside, and for the reason there was a total failure of evidence to show lack of knowledge of the contents. The exception in effect is, the Court charged proponents' fourth request that the execution of a will by a person of sound and disposing mind and memory presumed knowledge of the contents; the contestants were bound to show contra that the testatrix had no knowledge of contents; that there was no particle of testimony to that effect. This exception raises no new question; it is concluded by what we have said hereinbefore.

:..We come now to the third exception and issue; it springs out of the Court's allowance of the contestant's fourth request. The jury was certainly the judge of the testatrix's capacity to make a will at the time it was signed. The request stated that. The jury was as surely to judge if there was then doubtful capacity. The request stated that. If the jury found the latter postulate to be true, then it ought to have been satisfied that the testatrix understood the contents of the will. The request stated that. The appellants say, though, and that is the point of the exception, that there was no particle of testimony tending to show "doubtful capacity;" that all the testimony showed capacity; and that, therefore, the Court had no warrant to submit to the jury if the testatrix understood the contents.

The Court charged the proponents' second request, that proof of the paper writing drew to it a presumption of the testator's capacity; and in that connection the Court read to the jury from the case of *McNinch* v. *Charles*. How much capacity it takes to make a will is a question of law; whether the testator had that much is a question of fact. *Tillman* v. *Hatcher,* 24 S. C. L. (Rice) 271. In the case at bar, as in the case just cited, the Court left it to the jury to find if the capacity was doubtful.

It is true all the witnesses to the will and the attending physician and others testified that the testatrix had mind enough to make a will. But the mind resides in the body, and the ailments of the flesh act upon the mind. In the instant case the testatrix was very old; she was nearly blind; she could not write her name; she was propped up in bed to sign; she did not say the paper was a will, nor did any of these present say so. These and the other circumstances hereinbefore particularly recited all went to the jury; and the jury was not bound to accept the view of the witnesses. The words of the Court in the Tillman-Hatcher case, at page 280, are pertinent here. The issue was "within the peculiar province" of the jury. Doubtful

capacity is not conterminous with mental alertness. There might be capacity, yet it may not have been exercised under the particular circumstances of the case. Capacity and undue influence may be closely allied in a particular case, as they were in the case at bar. And the Court added to the fourth request a proper direction about undue influence.

In the case of *Boyd* v. *Boyd*, 21 S. C. L. (3 Hill) 343, the Court also referred to the intimate connection betwixt bodily infirmity and doubtful capacity. Judge O'Neal, who tried the case, said:

"I thought, and so said to the jury, that although the mind of Thomas Boyd was good, that yet, from his great age, his pain and hardness of hearing, there ought to be proof of instructions."

We are, therefore, of the opinion that the Court was warranted, under the circumstances, to submit to the jury whether or not the testatrix's capacity to make a will was doubtful, and that the request was, therefore, relevant.

The only other issue is whether the testimony of the witnesses, Mr. and Mrs. Wood, was competent. They gave in evidence, for the contestants, declarations made in their presence by Daniel and by James McKie, and by Mrs. Stevens, too.

The proponents objected to the testimony because it was hearsay, and because James McKie was at the time dead. The issue that was up for trial was whether the contents of the will expressed the real mind of the testatrix. The circumstances before set out had opened the door to that inquiry, and any testimony which shed light one that question was relevant. If the before mentioned circumstances suggested an inference of undue influence, of doubtful capacity, or a lack of knowledge of the contents, then a declaration by the parties to the influence would confirm such inference.

The testimony is now challenged on four grounds: First, that it is hearsay; second, that it was made when the declar-

ants had no interest, to wit, before the will was made; and, third, because it affects the interests of the four daughters who were not inveigled into the declarations; and, fourth, because one of the declarants, James McKie, was dead when the declarations were given in evidence.

The exception refers more particularly to the declarations of James, because Daniel and Mrs. Stevens were both on the witness stand, and denied the declarations they were said to have made.    These were the declarations of James as given in by Mrs. Wood:

"A.  He came to our house and said he came to see about some property; that he did not expect to give cousin Si anything at all.    After he came he mentioned that I had had some dealings that way, and I told him, 'No, I never had any dealings to leave out a member of a family;' that when my mother died Mr. Sheppard wrote her will, and he said they charged too much, and I said, 'Why don't you give it to her?' and he said, 'She will not do it, and I will have to wait until she does not realize what she is doing to do that themselves.' * * * Q.  And he said to you at that time that he would have to wait before the old lady got so old she did not know what to do?    A.  That she did not realize what she was doing; and that she would not sign it and leave out any member.    Q.  She would not sign it and on account of that he would have to wait until she did not know what she was doing before he could get her to do it?    A.  Yes, sir."

And these were the declarations of James as given in by Mr. Wood:

"A.  He wanted to know how to get a will drawn and keep his mother from knowing it; he wanted to get a will drawn up sufficient to get the property from Si McKie; he did not want him to have anything.    Q.  What did he say?    A.  He said he wanted to know how my wife managed to get the place we were living on that her mother gave her, and she said she got Mr. Sheppard to draw up the papers; Mr. Sheppard and her mother decided on it, and he said that was his

trouble, and he said the devilish lawyers wanted it all for fixing up the papers.   Q. He said that was his trouble; that his mother was not willing to cut Si out?   A. Yes, sir; that she was not willing to cut Si out.   Q. The paper your wife had Mr. Sheppard fix was on what matter?   A. Mr. Sheppard had drawn up a deed for my wife's mother, deeding her the place and land, and he wanted to know how the deed was drawn up, like he did, without paying Mr. Sheppard anything to do it."

Whether this be true was peculiarly a question for the jury; the credibility of a witness, in law, is always for the jury.

If it be true that Mrs. McKie desired to include Josiah as a legatee of her bounty, and that James knew the fact, and that James intentionally postponed the making of the will until Mrs. McKie was unable to know what she was doing, and that Daniel had her to sign a will under the circumstances before named, and that thereby Josiah was excluded, and that James and the others were unfriendly to Josiah, and that Josiah was not permitted to see his mother in her last illness, then the jury might conclude the instrument was not expressive of the testator's mind.   So much will not be challenged.   The thing that is challenged is the way of proving James' intent, to wit, by his declaration of it.

Nobody knows a person's intent but the person and his God; and if the person shall declare his intent hostile to another, that declaration is the best evidence of it; and when there is added to the declaration the circumstances of the case, the intent may be established.   "The presence of a design or plan to do a given act has probative value to show that the act was in fact done." Wigmore, sec. 102.   "There is no situation in which a design to do an act would be irrelevant to show the doing of the act."   Wigmore, sec. 104.   See cases cited at 2205 in the same work.

So that the declaration was not hearsay, but original testimony; it went to establish the actor's wrong intent out of his own mouth.

The circumstance that at the time the declaration was made James had no interest in his mother's estate because the will had not yet been made does not render the testimony incompetent. The books do say that a declaration against interest is not competent unless the declarant then have an interest. And when the declaration is strictly in derogation of one's interest and nothing more, there is no ground to admit it unless there be then a present interest. But in the instant case the declaration was not of that narrow character. The declarant had some sort of interest in expectancy in the testatrix's estate; but if the circumstances and the declarations were true, he set on foot a scheme to accomplish the defeat of his mother's real will, so that his interest might be enlarged and that of Josiah might be defeated.

It is true the will had not been made when the declarations were made. But "the existence in the mind of a deliberate design to do a certain act, when once proved, may properly lead to the inference that the intent once harbored continued and was carried into effect by acts long subsequent to the origin of the motive by which they were prompted." Bigelow, J., in *Cook* v. *Moore,* 11 Cush. (Mass.) 213.

The further suggestion of appellant, that six persons are legatees, under the will, and the declarations of three of them ought not to impair the whole instrument, is plausible, but it is not sound in this case. The Iowa case cited by the appellant to sustain that view was announced where the evidence of undue influence was very meagre, and where the declaration itself was equivocal. The case from Missouri cited by the appellants (*Schierbaum* v. *Schemme,* 157 Mo. 1, 57 S. W. 526, 80 Am. St. Rep.

604) is more in point, and it goes to the length stated. But our own case, hereinafter cited, is contra.

In the instant case all the six children, except Mrs. Stevens and Josiah, were living with Mrs. McKie. Of those six Daniel, James, Mrs. Stevens, and Miss Mattie are more or less linked in the testimony with at least the alleged plan to keep Josiah from seeing his mother in her last illness. And Mrs. Wood testified that Mrs. Stevens made declarations similar to those made by James; here is Mrs. Wood's testimony referring to what Mrs. Stevens declared:

"A. She said because we do not expect to give him anything, and as soon as my mother dies he will come in and want his part, and we do not expect to give him anything; and Dan said, 'No; we will have to give him a little to make it stick. We will have to give him a little to make it stick.' "

Of the four proponents, then, Mrs. Mason and Miss Mary are the only ones who are not connected by word of mouth with the alleged scheme. If the verdict of the jury shall be sustained the distribution of the estate will not materially affect the interest of Mrs. Mason and Miss Mary. By the will the four daughters were to have $1,250 each, and James and Daniel were to have 300 acres of land, of unascertained value. By the statute of distributions, the whole estate will be equally divided between the seven children. Furthermore, all the children made common cause against Josiah; the jury might have inferred they were with James from the start. Our own case of *Peeples* v. *Stevens,* 42 S. C. L. (8 Rich. 200), 64 Am. Dec. 750, makes full answer to the appellant's suggestion, as well as to most of the other issues we have discussed. It is practically decisive of this case.

The last suggestion of the appellant, that James' declaration is incompetent because he was dead at its giving, is of no consequence. No statute lays embargo upon it; there is no rule of law which inhibits the giving in evidence a competent declaration of one then dead. And in some cases the declaration is not competent, unless

the declarant be then dead.   *Lowry* v. *Moss,* 32 S. C. L. (1 Strob.) 64.

One other question was argued by one of the appellants' counsel; it is stated thus:

"The testimony fails to connect in any way the testatrix with the declarations (of James and Daniel).

There is no evidence of action or reaction so far as she was concerned.   It is too remote in point of time and substance."

The argument is that the declaration is irrelevant to show that the intent of the declarants operated to accomplish the end to which it reasonably pointed.   If the testimony was competent, and it was; if the declaration was true, and the jury found it was; and if the event which followed, to wit, the terms of the will, conformed to the declaration—then the connection between the two events is not a matter of wild guess, but one which appeals to the judgment of a jury.

Our judgment is that the exceptions show no error below, and the judgment of the Circuit Court is affirmed.