14025

HUGHES v. DUNCAN

(179 S. E., 326)

*Messrs. Carlisle, Brown & Carlisle,* for appellant,

*Messrs. Hawkins & Hawkins, Johnson & Williams,* and *Lyles & Daniel,* for respondent,

March 25, 1935.

The opinion of the Court was delivered by MR. M. M. MANN, ACTING ASSOCIATE JUSTICE.

The proponent of a paper proffered as the will of Perry Duncan prosecutes this appeal from a decree denying probate based on a jury's verdict of "no will" rendered on a trial *de novo* in the Court of Common Pleas on appeal from a decree of the Probate Court which had rejected it.

Perry Duncan, late of Greer, S. C., a bachelor between sixty-eight and seventy years old, unable to read or write, died on May 18, 1931, in the home of Ina and Hovey G. Tooley, where he had lived for the preceding six months and ten days. His only heir was his older brother, Reese Duncan, who has since died, and whose children have been substituted as respondents. The contested paper, signed by his mark, dated three days before his death, and giving all his property to the Tooleys, was admitted to probate in common form on June 3, 1932. The heir filed the statutory notice to require proof in solemn form and the executor then commenced this proceeding in the Probate Court to establish the will. From an adverse decree there, he appealed to the Court of Common Pleas where the question of "will or no will" was. tried *de novo* before Judge Oxner and a jury.

The contestants assailed the paper on the ground that its formal execution was procured by undue influence brought to bear by the beneficiaries and their family physician while the testator was on his death bed in their home, three days before his death, when his age, loneliness, bodily infirmity, drugged condition, and fast-ebbing physical and mental powers made him incapable of making a will or of exercising a free agency in disposing of his property.

At the close of the testimony, the proponent moved for the direction of a verdict in favor of the will on the ground

that there was no evidence sufficient to support an inference of testamentary incapacity, or of undue influence procuring its execution. The motion was refused, and the Court submitted the following issues to the jury:

"1. Did Perry Duncan, at the time of signing the paper propounded herein as his last will and testament, have sufficient mental capacity to make his will and understand its contents?

"2. Was the said Perry Duncan unduly influenced into making the paper now offered as his last will and testament?

"3. Is the paper propounded herein by R. M. Hughes the true last will and testament of Perry Duncan?"

The jury answered "No" to the first and third questions, and "Yes" to the second.

The proponent then moved for an order rejecting the verdict and admitting the will to probate, or, failing in that, for a new trial, upon grounds substantially the same urged in the exceptions here. The motions were refused, the verdict against the will confirmed, and the cause remanded to the Probate Court for administrative proceedings as in cases of intestacy. This appeal followed, charging error to the trial Court: (1) In refusing the motion to direct a verdict in favor of the will for insufficiency of evidence; (2) in refusing to set aside the verdict as contradictory; and (3) in charging on the facts. The appellant argues these contentions in the order stated, and we will discuss and dispose of them in the same order.

Will contest cases are law cases, and if there is any evidence tending to support the grounds upon which a will is assailed, the Court must submit the issues to the jury, whose findings, when so supported, will not be reviewed or disturbed. *Ex parte* McLeod, 140 S. C., 1, 5, 7, 138 S. E., 355; *Ex parte McKie,* 107 S. C., 57, 91 S. E., 978, 984; *In re* Perry's Will, 106 S. C., 80, 90 S. E., 401; *Tillman v. Hatcher,* Rice, 271; *Farr v. Thompson,* 1 Speers, 93, 101.

Here there was abundant evidence to go to the jury and the motion to direct a verdict in favor of the will was rightly refused. The undisputed circumstances surrounding the making and execution of the will warranted an inference of undue influence and cast doubt upon whether the testator knew its contents. He was old, on his death bed, under the influence of heart ˙stimulants, with death only three days away, in the home of the beneficiaries, attended by their family physician, who, at the request of one of them, wrote the will and was master of ceremonies at its execution, putting to the dying man leading questions to meet the legal formalities of execution, publication, and attestation. The testator could not read. The brother of the beneficiaries was sent for the attesting witnesses, who were brought from relatively great distances in different directions when lifelong friends and neighbors of the testator were near at hand. The will was not read over in the presence of the witnesses. None of the witnesses could say what was in it, nor whether the testator knew its contents. In view of the testator's illiteracy and the disposition of his whole property to strangers in blood, and the care observed in the formalities of execution, the omission to read the will or mention anything of its contents was a circumstance which the jury might consider, along with the other circumstances stated.

Furthermore, there was testimony from many disinterested witnesses that the testator had frequently and recently declared his intention to leave his property to his family. The witness Baswell, who was the nearest neighbor to the Duncan brothers before their home was burned, testified that, on Sunday night preceding the testator's death the following Monday week, he was left alone with Mr. Duncan while Hovey Tooley went to milk; that, saying he could not read and knew Mr. Reid Wood who had drawn his mother's and his sister's wills would write it like he wanted it, Mr. Duncan asked the witness to bring Mr. Wood

to write his will; that, knowing Mr. Wood had been ill, the witness suggested two others for that office, but Mr. Duncan objected, saying if he could not get Mr. Wood he would not bother with it; Baswell agreed to go for Mr. Wood next morning, and Mr. Duncan then discussed the disposition he wished to make of his property, saying he wished to take care of his old brother and his nephew Frank with his large family, and to pay the Tooleys something for their trouble as they had been good to him; next morning Baswell saw Mr. Wood who appointed 2 o'clock that afternoon for writing the will; Baswell returned to let the testator know, stopping by Tooley's filling station and telling Hovey Tooley that he had been for Mr. Wood to write Mr. Duncan's will; Tooley stated that Mr. Duncan had said if Baswell or Wood came not to let them in the room; Baswell said that he had done an errand for a friend and was going to tell him about it; Tooley went with Baswell to the house, left him in the kitchen, went alone into the sick room, came out after a few minutes and went in again with Baswell; Baswell told Mr. Duncan that Mr. Wood would come at 2 o'clock; the testator cried a little and told Baswell to go back and tell Mr. Wood not to come as the doctor had been there and said he was too sick. The medical testimony offered by the proponent showed the testator's malady to be progressive. The will here assailed was made four days later.

Other features and details of the testimony tending to strengthen and broaden the basis of the inferences drawn by the jury could be mentioned, but enought has been said to show that, under the testimony, the Court was required to submit the case to the jury.

There was no error in refusing to set aside the verdict as contradictory. The general verdict is amply supported by the evidence. It is consistent with the finding on undue influence and with the finding of incapacity. In such cases the general verdict should not be disturbed.

The following from the case of *Dexter v. Codman,* 148 Mass., 421, 19 N. E., 517, is in point: "The fact that the jury erroneously found the testator *non compos mentis* does not require the setting aside of their finding, that the will was procured through undue influence and fraud, as the one error does not necessarily imply the other." And, as Mr. Justice Gage said for this Court in *Ex parte McKie, supra,* "the mind resides in the body, and the ailments of the flesh act upon the mind. * * * Doubtful capacity is not conterminous with mental alertness. There might be capacity, yet it may not have been exercised under the particular circumstances of the case. Capacity and undue influence may be closely allied in a particular case, as they were in the case at bar."

The portions of the Court's charge challenged as trenching on the facts are not subject to that criticism. They enunciate well-established principles of law and furnished the jury a clear and impartial guide for their deliberations, without in the least constraining them to a view in favor of either party, or indicating the Court's opinion on any issue. Neither incapacity nor undue influence will submit to a simple or limiting definition, and the latter can rarely be shown by evidence of overt acts. It was the Court's duty to give full and careful definitions and to instruct on the general elements of proof. It met this duty by instructions so free of the asserted criticism that they could be appropriately employed in any case involving incapacity or undue influence, however variant the facts might be.

The record discloses no prejudicial error. The exceptions are overruled and the judgment affirmed.

MESSRS. JUSTICES STABLER, CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE PHILIP H. STOLL concur.